867 F.2d 1076
 57 USLW 2504, 51 Ed. Law Rep. 1160
 Bridget C. MERGENS, by & through her next friend, Dr. Daniel
N. MERGENS; Stephen P. Hollar, by & through his next
friend, Mrs. Judith L. Hollar; Brian P. Rensing, by &
through his next friends, Robert W. & Sherry K. Rensing;
David K. Harris, by & through his next friends Kenneth &
Myra Harris, and Andrea Simmons, by & through her next
friends, Robert L. & Linda L. Simmons, Appellants
United States of America Intervenor-Plaintiff Below.
Kendra K. Kellison, etc. by and through her next of friends,
Victor Kraatz and Linda Kraatz; Michelle M. Harris, etc. by
and through her next of friends Kenneth Harris and Myra
Harris; Kevin Brown, etc. by and through his next of
friends Robert W. Rensing and Sherry K. Rensing, Appellants,
v.
The BOARD OF EDUCATION OF the WESTSIDE COMMUNITY SCHOOLS
(DIST. 66); Wayne W. Meier, President of the Westside
Community School Board; James E. Findley, Principal of the
Westside High School; James A. Tangdall, Assistant
Superintendent of the Westside Community School District;
& Kenneth K. Hansen, Superintendent of the Westside
Community School District, Appellees.
 No. 88-1227.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 17, 1988.
Decided Feb. 8, 1989.
 
 Douglas W. Davis, Virginia Beach, Va., Brant M. Laue, Washington, D.C., for appellant/intervenor.
 Allen E. Daubman, Omaha, Neb., for appellees.
 Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Appellants, students who attend Westside High School, a public school, appeal from a final judgment entered in the District Court for the District of Nebraska. The case was tried to the court. The district court held that the formation of a Christian Bible Study Club at Westside High School in Omaha, Nebraska, would violate the establishment clause of the first amendment.
 
 
 2
 For reversal, appellants argue that (1) Westside High School maintains an open forum, (2) the Equal Access Act, 20 U.S.C. Secs. 4071-4074 (1984) (EAA), is constitutional and should be applied to this case, and (3) the actions of the Westside High School administration violate the first and fourteenth amendments. For the reasons discussed below, we reverse the judgment of the district court.
 
 
 3
 Westside High School (WHS) is a part of the Westside Community School system, an independent public school district, in Omaha, Nebraska. The school is controlled by appellee, the Board of Education of the Westside Community Schools (School Board). As a public school, WHS receives federal funds.
 
 
 4
 WHS students are allowed to become members of various student groups and clubs, all of which meet after school hours on school grounds. The students may choose from approximately thirty different groups and clubs on a strictly voluntary basis. All of the clubs have faculty sponsors.
 
 
 5
 Board Policy 5610 recognizes these student clubs as a "vital part of the total education program as a means of developing citizenship, wholesome attitudes, good human relations, knowledge and skills." There is no written school board policy concerning the formation of clubs. Rather, students wishing to form a club present their goals and objectives to a school official who analyzes the stated goals and objectives and decides whether or not the proposed club is consistent with Board Policy 5610. Until appellants attempted to form a Christian Bible Study club in January 1985, no club had ever been denied access to the school.
 
 
 6
 Appellants first presented their idea for a Christian Bible Study Club to Dr. Findley, the principal of WHS. Dr. Findley denied their request. Again in February 1985, appellants presented their request to Dr. Findley and Dr. Tangdall, associate superintendent of schools for the Westside Community Schools. At that time the request was discussed with Kenneth Hansen, superintendent of schools for the Westside Community Schools. The three school officials agreed that appellants' request should be denied on the basis that allowing such a club would violate the establishment clause of the first amendment.
 
 
 7
 On March 4, 1985, appellants petitioned the School Board to approve their request to form a Christian Bible Study Club. Appellants stressed to the Board that they were not requesting a faculty sponsor unless required by school policy. If one were required, appellants asserted that the faculty sponsor would only be needed for custodial purposes. The School Board denied appellants' request stating that the proposed club would not be consistent with Board policy which permits school buildings to be used only for school-sponsored, curriculum-related activities.
 
 
 8
 In April 1985 appellants brought suit in the District Court for the District of Nebraska alleging that their freedom of speech, freedom of assembly and association, and freedom to exercise religion had been violated by the School Board and its employees in violation of the first and fourteenth amendments, Article I of the Nebraska Constitution, and the Equal Access Act, 20 U.S.C. Secs. 4071-4074.
 
 
 9
 On February 2, 1988, the district court entered judgment in favor of appellees. The court held that WHS maintains a closed forum and that therefore the Equal Access Act does not apply to WHS. Bridget Mergens, et al. v. The Board of Education of the Westside Community Schools, et al., No. CV 85-0-426, slip op. at 13 (D.Neb. Feb. 2, 1988). The court further held that the actions of WHS officials did not violate the students' first and fourteenth amendment rights. Id. at 15. This appeal followed.
 
 Application of the Equal Access Act
 The EAA provides in relevant part:
 
 10
 (a) Restriction of limited open forum on basis of religious, political, philosophical, or other speech content prohibited
 
 
 11
 It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.
 
 
 12
 (b) "Limited open forum" defined
 
 
 13
 A public secondary school has a limited open forum whenever such school grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time.
 
 
 14
 20 U.S.C. Sec. 4071(a)-(b).
 
 
 15
 The EAA is only applicable to those federally assisted public secondary schools which maintain a "limited open forum" as defined by the Act. A public secondary school may properly exclude a student club on the basis of the content of the club's speech only if the school maintains a closed forum--that is, if all of the other student clubs are curriculum related. If even one noncurriculum-related student club is allowed, the school maintains a limited open forum as defined by the EAA and cannot deny the club access to school premises during noninstructional time on the basis of the content of the club's speech.
 
 
 16
 "Noncurriculum related" is not defined in the Act. Appellants argue, however, that WHS has created a limited open forum because several of the student clubs are noncurriculum-related. Some ten clubs were cited by appellants as being noncurriculum-related. Among these are the Chess Club; Interact, a service club peripherally connected to Rotary International; Subsurfers, a club for students and community members interested in scuba diving; and Zonta, the female counterpart to Interact.
 
 
 17
 At trial, WHS attempted to show that each of these clubs is curriculum-related. For example, Dr. Findley testified that the Chess Club related to the curriculum because it fosters critical thinking and logic. Dr. Findley explained that such skills are extensions of the goals for several different courses, even though WHS does not offer a logic class. Dr. Findley explained that Zonta and Interact are related to the goals of sociology and psychology and that Subsurfers relates to the goals of physical education. The district court found these arguments persuasive and held that WHS maintains a closed forum and that, therefore, the EAA does not apply to WHS. We disagree.
 
 
 18
 Allowing such a broad interpretation of "curriculum-related" would make the EAA meaningless. A school's administration could simply declare that it maintains a closed forum and choose which student clubs it wanted to allow by tying the purposes of those student clubs to some broadly defined educational goal. At the same time the administration could arbitrarily deny access to school facilities to any unfavored student club on the basis of its speech content. This is exactly the result that Congress sought to prohibit by enacting the EAA. A public secondary school cannot simply declare that it maintains a closed forum and then discriminate against a particular student group on the basis of the content of the speech of that group.
 
 
 19
 The legislative history of the EAA is helpful in determining what Congress intended to be considered noncurriculum-related. During a Senate debate before the passage of the bill, Senator Gorton and Senator Hatfield discussed the definition of "noncurriculum-related" student groups:
 
 
 20
 MR. GORTON: I gather from the previous remarks of the Senator from Oregon and the Senator from Alabama that the definition of these non-related student groups is fairly broad. The chess club would be such a group. If the school permits a chess club, it has thereby created the limited open forum which brings into effect the proscriptions of the act.
 
 
 21
 MR. HATFIELD: That is correct.
 
 
 22
 130 Cong.Rec. S8342 (daily ed. June 27, 1984) (statements of Sens. Gorton and Hatfield). Congress did not intend for the EAA to be easily circumvented by administrative decree. Many of the student clubs at WHS, including the chess club, are noncurriculum-related. Therefore, WHS maintains a limited open forum, and the EAA forbids discrimination against appellants' proposed club on the basis of its religious content.
 
 Constitutionality of the Equal Access Act
 
 23
 Appellees argue that even if WHS has created a limited open forum, this court should still affirm the decision of the district court because the EAA violates the establishment clause. We disagree.
 
 
 24
 The EAA codifies the Supreme Court's decision in Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), (Widmar ), extending that holding to secondary public schools.[1] The facts in Widmar are quite similar to the facts in the instant case. The University of Missouri at Kansas City, a state university, generally allowed registered student groups to use its facilities. However, the university did not allow registered student groups desiring to use the facilities for religious worship and religious discussion.
 
 
 25
 To determine whether an "equal access" policy at the university allowing registered student religious groups to meet would offend the establishment clause, the Court applied the three-part test from Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971) (Lemon ). Under the Lemon test, a policy or statute is constitutionally sound if: (1) it has a "secular ... purpose," (2) "its ... primary ... effect ... neither advances nor inhibits religion," and (3) it does not "foster 'an excessive government entanglement with religion.' " Id. (citation omitted).
 
 
 26
 Widmar concluded that an equal access policy at the university level did not violate any part of the Lemon test. First, the policy has a secular purpose because one of the university's purposes is to provide a forum for the exchange of ideas between students. 454 U.S. at 271 n. 10, 102 S.Ct. at 275 n. 10.
 
 
 27
 Second, the policy did not have the "primary effect of advancing religion" because any benefits conferred on religious groups would be "merely 'incidental.' " Id. at 273, 102 S.Ct. at 276. Two factors influenced the Court in its determination that an equal access policy at the university level did not have the primary effect of advancement of religion. First, the policy did not "confer any imprimatur of state approval on religious sects or practices," id. at 274, 102 S.Ct. at 276, because young adults are able to understand that such a policy is neutral toward religion. Id. at 274 n. 14, 276 n. 14. Second, the fact that the benefits would be devolved upon such a wide variety of nonreligious as well as religious groups would indicate a "secular effect." Id. at 274, 102 S.Ct. at 277.
 
 
 28
 Finally, an equal access policy was less likely to entangle the university with religion than a policy of religious censorship which would require the university not only to define "religious speech" but also to constantly monitor the meetings of registered student groups. Id. at 272 n. 11, 102 S.Ct. at 275 n. 11.
 
 
 29
 The Court also held that the university's "exclusionary policy violates the fundamental principle that a state regulation of speech should be content-neutral." Id. at 277, 102 S.Ct. at 278.
 
 
 30
 The language of the EAA closely tracks the holding of the Court inWidmar. In fact, the only difference between the EAA and Widmar is the EAA's express extension of the equal access principle to public secondary school students. Any constitutional attack on the EAA must therefore be predicated on the difference between secondary school students and university students.[2] We reject this notion because Congress considered the difference in the maturity level of secondary students and university students before passing the EAA. We accept Congress' fact-finding.
 
 
 31
 Indeed the facts in the case before us today are the same as the facts in Widmar except for the setting. Therefore, even if Congress had never passed the EAA, our decision would be the same under Widmar alone.[3]
 
 
 32
 Accordingly, we reverse the decision of the district court.
 
 
 
 [1]
 As Senator Levin explained during the Senatorial debate before passage of the EAA:
 [T]he pending amendment is constitutional in light of the Supreme Court's decision in Widmar against Vincent. This amendment merely extends a similar constitutional rule as enunciated by the Court in Widmar to secondary schools.
 
 
 [130]
 Cong.Rec. S8355 (daily ed. June 27, 1984) (statement of Sen. Levin)
 
 
 [2]
 The argument that less mature high school students are likely to confuse an equal access policy with state sponsorship of religion was explicitly rejected by the Senatorial Committee on the Judiciary in its report of the EAA:
 Authors writing in leading legal periodicals have considered the issue and agree that students below the college age can understand that an equal access policy is one of State neutrality toward religion, not one of State favoritism.
 S.Rep. No. 357, 98th Cong., 2d Sess. 8 (1984).
 
 
 [3]
 But see Garnett v. Renton School District No. 603, 865 F.2d 1121, 1126, (9th Cir. 1989)
 The impressionability of young students, compulsory attendance laws that make students a captive audience, and the role of public schools in inculcating democratic ideals--distinguish public secondary schools from public universities.