**LAMB'S CHAPEL and John Steigerwald, Plaintiffs,**

v.

**CENTER MORICHES UNION FREE SCHOOL DISTRICT and Louise Tramontano in her Official Capacity as President of the Board of Education for Center Moriches Schools, Defendants.**

No. CV 90–0500.

United States District Court, E.D. New York.

May 16, 1990.

Migliore & Infranco by Joseph P. Infranco, Commack, N.Y., for plaintiffs.

Dranitzke, Lechtrecker & Trabold by Harold G. Trabold, Patchogue, N.Y., for defendants.

Cynthia Plumb Fletcher, Albany, N.Y., for New York State School Boards Ass'n (amicus).

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs Lamb's Chapel and John Steigerwald ("Steigerwald") bring this action for declaratory and injunctive relief against the Center Moriches Union Free School District ("School District") and Louise Tramontano, in her official capacity as President of the School District's Board of Education (the "Board"), because of defendants' refusal to allow plaintiffs to use the School District's facilities during nonschool hours for the purpose of showing a film series by Dr. James Dobson, entitled "Turn Your Heart Toward Home" (the "film series"). Presently before the Court is plaintiffs' motion for a preliminary injunction to compel defendants to allow plaintiffs to show the film series in the School District's facilities. For the reasons below, the motion is denied.

## I. BACKGROUND

The facts as alleged in the complaint and as adduced at the hearing on plaintiffs' motion on March 14, 1990 are as follows: Lamb's Chapel is an evangelical Christian church located in Center Moriches, New York, and incorporated under New York's Not–for–Profit Corporation Law; Steigerwald is its pastor. Since November 1988, on behalf of Lamb's Chapel, Steigerwald has submitted three applications to defendants to use the School District's high school facilities.

The first application, dated November 19, 1988, stated that the purpose for which Lamb's Chapel sought to use the facilities was "to conduct Sunday a.m. service and Sunday School, Nursery, etc." Plaintiff's Exhibit 5a [hereinafter Pl.Ex. # ]. According to Steigerwald, this application was rejected because of the religious content of the film series. Subsequently, by the second and third applications, dated December 16, 1988 and October 11, 1989, respectively, plaintiffs sought to use the high school auditorium for one evening for five consecutive weeks to show the film series. For purposes of this action, plaintiffs' conceded at the hearing that the film series is of a religious nature and the showing is for a religious purpose.[1]

---

1. In this regard, the October 11 application notes that the film series is a "family oriented movie from a Christian perspective." Pl.Ex. 7a.

Following an initial review of the December 16 application, by letter dated January 18, 1989, Alice Schoener ("Schoener"), the School District's business manager and district clerk, on behalf of the Board, wrote Steigerwald to express the School District's concern that plaintiffs' use of the facilities appeared to be for a religious purpose. The letter indicated that the School District is

> bound by education law concerning the use of school facilities by religious organizations. Fortunately, we have not, to date, been put to the test of determining when a use of the facility by one of our local churches would constitute "religious purposes." I am hard pressed to determine from your description, what the five-part movie would represent, but suspect that it would certainly have religious connotations.
>
> The district has not, in the past, allowed the high school auditorium to be used by any group primarily for its own purposes. . . .
>
> If you care to pursue your request, please provide a more detailed description of your proposed use (including a brochure describing the film). . . . I will be happy to present your request to the Board of Education at our February meeting.

Pl.Ex. 6b. After receiving and reviewing the brochure, Schoener again wrote Steigerwald on behalf of the Board, by letter dated February 8, 1989, to reject the application because the film "appear[ed] to be church related." Pl.Ex. 6d. The third application, substantially similar to the second, was denied on the same basis.

According to defendants, the legal basis for refusing the requests was that use of the facilities for religious purposes would violate § 414 of the New York Education Law [2] and Rule No. 7 of the School District's Rules and Regulations for Community Use of School Facilities,[3] which govern the use of its facilities.

Plaintiffs argue, however, that during 1987 and 1988 other organizations had been allowed to use the school facilities, and that some had done so for religious purposes.[4] In particular, plaintiffs point to performances by the Salvation Army Youth Band and the Southern Harmonize Gospel Singers, and a lecture series by the Mind Center, purportedly, a New Age religious group.[5] Complaint para. 18. Because of this practice, plaintiffs contend that they too should be allowed to use the school facilities for religious purposes. Plaintiffs argue that defendants have violated their first and fourteenth amendment rights of freedom of speech, freedom of association and free exercise of religion and their four-

2. *See* Addendum.

3. Rule No. 7 provides that "[t]he school premises shall not be used by any group for religious purposes." Pl.Ex. 5a. The Rules and Regulations further provide that groups requesting to use the school facilities must be predominantly composed of residents and/or students from the school community, though exception is made for outside not-for-profit organizations but only if the applicant demonstrates that there is a benefit to the school community. *Id.*

4. Plaintiffs list organizations which have been allowed to use the school facilities in the years 1987 and 1988:

A New Age religious group known as the "Mind Center"
Southern Harmonize Gospel Singers
Salvation Army Youth Band
Hampton Council of Churches' Billy Taylor Concert
Center Moriches Co-op Nursery School's Quilting Bee
Manorville Humane Society's Chinese Auction
Moriches Bay Power Squadron
Unkechaug Dance Group
Paul Gibson's Baseball Clinic
Moriches Bay Civic Association
Moriches Chamber of Commerce's Town Fair Day
Center Moriches Drama Club
Center Moriches Music Award Associations' "Amahl & the Night Visitors"
Saint John's Track and Field Program
Girl Scouts of Suffolk County
Cub Scouts Pack 23
Boy Scout Troop #414

Plaintiffs' Brief in Support of Motion for Preliminary Injunction, at 7.

5. The lecture series was sponsored by the Center Moriches Public Library. The series, entitled "Psychology and the Unknown," was on parapsychology and transpersonal psychology and dealt with eastern mysticism and metaphysics.

teenth amendment right to equal protection. Defendants contend that they may properly refuse to allow any group to use the facilities for religious purposes. In this respect, they maintain that they would not and did not knowingly allow any organization to use the school facilities for religious purposes. In addition, they argue that allowing plaintiffs to use the facilities for religious purposes would violate the Establishment Clause of the first amendment, as well as N.Y.Educ.Law § 414 and the School District's Rule No. 7.

## II. DISCUSSION

### A. *Preliminary Injunction Standard*

■ In the Second Circuit, to obtain a preliminary injunction the moving party must show: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Deeper Life Christian Fellowship, Inc. v. Board of Educ.*, 852 F.2d 676, 679 (2d Cir.1988) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam)). The Court therefore turns to evaluate plaintiffs' request under this standard.

### B. *Irreparable Harm*

■ Regarding irreparable harm, plaintiffs contend that denial of the preliminary injunction to use the facilities to show the film series would cause them irreparable harm. This Court agrees. As the Supreme Court has stated, "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976); *see also Deeper Life*, 852 F.2d at 679. Accordingly, the Court finds that plaintiffs have demonstrated irreparable harm, and therefore moves on to assess the merits to determine whether plaintiffs have met the second part of the preliminary injunction standard.

### C. *The Merits*

As for the second part of the standard, plaintiffs contend that defendants created an "open forum" by allowing a "wide assortment" of groups to use the school facilities, including three groups that used the facilities for "meetings and performances with particular religious messages." Complaint para. 18. As a result, they claim that "this forum cannot be closed to others based on the religious content of their message." *Id.* In opposing the motion, defendants contend that the state, through § 414 and the School District's Rule No. 7, has limited outside organizations' access to the School District's facilities by creating only a "limited public forum," and may legitimately deny access to any group seeking to use the school's facilities for proscribed purposes. As discussed below, this Court finds that plaintiffs have failed to satisfy the second part of the standard.

The Supreme Court has identified three types of forums for purposes of free speech analysis: (1) the traditional public forum; (2) the public forum created by government designation; and (3) the nonpublic forum. *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 572, 107 S.Ct. 2568, 2570–71, 96 L.Ed.2d 500 (1987) (citing *Perry Educ. Ass'n v. Perry Local Educs.' Ass'n*, 460 U.S. 37, 45–46, 103 S.Ct. 948, 954–56, 74 L.Ed.2d 794 (1983)). Historically, streets and parks have been categorized as traditional public forums. *Perry Educ. Ass'n v. Perry Local Educs.' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983) (citing *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 963–64, 83 L.Ed. 1423 (1939)). In contrast, "[w]hile the citizenry residing within a school district may be the intended users of the forum ..., public elementary schools are not, as to the general community, traditional public fora." *Deeper Life Christian Fellowship, Inc. v. Board of Educ.*, 852 F.2d 676, 679 (2d Cir.1988) (citing *Brandon v. Board of Educ.*, 635 F.2d 971, 980 (2d Cir.1980), *cert. denied*, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981)). Nor are public secondary schools, like the School District's here, traditional public forums.

*See Brandon v. Board of Educ.,* 635 F.2d 971, 980 (2d Cir.1980), *cert. denied,* 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981).

■ As for whether public school facilities are public forums, the Supreme Court has held that

school facilities may be deemed to be public forums only if school authorities have "by policy or practice" opened those facilities for "indiscriminate use by the general public," *Perry Education Assn v. Perry Local Educators' Assn,* 460 U.S. 37, 47 [103 S.Ct. 948, 956, 74 L.Ed.2d 794] (1983), or by some segment of the public, such as student organizations. *Id.,* at 46, n. 7 [103 S.Ct., at 955, n. 7] (citing *Widmar v. Vincent* [, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) ] ).

*Hazelwood School Dist. v. Kuhlmeier,* 484 U.S. 260, 267, 108 S.Ct. 562, 567–68, 98 L.Ed.2d 592 (1988); *see also Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 802, 105 S.Ct. 3439, 3448–49, 87 L.Ed.2d 567 (1985) ("The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse."). Based on the record, this Court finds that the School District has not by policy or practice either opened its facilities to indiscriminate use by the general public or some segment of the public. The school facilities are therefore not public forums. Rather, by enforcing restrictions on access imposed by state statute and by its regulations, the School District has created limited public forums.

Plaintiffs' argument that the defendants have created an "open forum" merely by allowing groups unrelated to the School District to meet there is without merit. The School District has not allowed so-called "unrelated" groups to use its facilities indiscriminately. Instead, the School District has restricted use based on the purpose for which the particular group seeks to use the property. Consequently, an "unrelated" group can use the facilities for a prescribed purpose but not otherwise.

■ The right to access government property and the standard for evaluating any restrictions varies according to the type of forum involved. *Calash v. City of Bridgeport,* 788 F.2d 80, 83 (2d Cir.1986). In either a traditional public forum or a public forum by government designation, the state may restrict access only by reasonable time, place, and manner regulations which are content-neutral or by content-based prohibitions, narrowly drawn to effectuate a compelling state interest, *Perry Educ. Ass'n,* 460 U.S. at 45–46, 103 S.Ct. at 954–56, whereas in a nonpublic forum, access can be restricted by reasonable and viewpoint-neutral regulations, *Jews for Jesus, Inc.,* 482 U.S. at 573, 107 S.Ct. at 2571; *Cornelius,* 473 U.S. at 806, 105 S.Ct. at 3451; *Perry Educ. Ass'n,* 460 U.S. at 49, 103 S.Ct. at 957. As for restricting access in a limited public forum, the Second Circuit explained in *Deeper Life:* "Under the limited public forum analysis, property remains a *nonpublic forum* as to all unspecified uses, and exclusion of uses—even if based upon subject matter or the speaker's identity—need only be reasonable and viewpoint-neutral to pass constitutional muster." *Deeper Life,* 852 F.2d at 679–80 (citations omitted) (emphasis added).

■ In *Deeper Life,* the Second Circuit reviewed a district court's grant of a preliminary injunction requiring the New York City Board of Education ("NYCBE") to permit a church to conduct religious services in a public school building during non-school hours notwithstanding the provisions of § 414 and a NYCBE regulation excluding fundraising for, teaching the tenets of, or distributing material promoting a particular religion. The Second Circuit stated that critical to determining whether the state has created a limited public forum is the state's intent in establishing the forum. *Id.* at 680 (citing *Calash,* 788 F.2d at 83). With respect to the state's intent, the court noted that under § 414 public school facilities may be used by the general public only for nine enumerated purposes and that use for religious worship and instruction is not one of those purposes. *Id.* (citing *Trietley v. Board of Educ.,* 65 A.D.2d

1, 409 N.Y.S.2d 912, 915 (4th Dep't 1978)). The court also noted that local school board regulations—such as the NYCBE regulation—are indicative of the state's intent and that such regulations may limit the availability of the forum. *Id.* Lastly, the court noted that § 414 and the New York State Commissioner of Education's interpretations of the statute "demonstrate ... that access to the school property is permitted only where it serves the interests of the public in general, rather than that of sectarian groups," and that "the thrust of the statute is to promote general knowledge, rather than to provide a forum for proselytizing or indoctrinating the public in a particular group's beliefs." *Id.* Notwithstanding that the church was seeking to use the school premises for a purpose arguably outside § 414, the court affirmed the grant of the preliminary injunction because the record showed that the NYCBE had a practice of granting use permits to other religious organizations, thereby creating a fair ground for litigation as to the state's intent in creating the forum. *Id.* at 680–81.

■ As for the state's intent in creating the forum at issue, as noted in *Deeper Life*, while § 414 lists allowable uses of public school facilities, nowhere does it provide for religious worship or instruction. *Id.* at 680. Moreover, the School District's Rule No. 7, explicitly precluding use of the school facilities for religious purposes, is a strong indication of the state's intent to limit the availability of this particular forum. *See id.* The statute and regulations clearly indicate the state's intent to selectively limit access to the School District's facilities. Based on the record, this Court finds that the School District's facilities are limited public forums. Hence, as to those who would use the facilities for proscribed purposes, in this instance, religious purposes, they are nonpublic forums; and, as such, any exclusion of use must be reasonable and viewpoint-neutral to pass constitutional muster. Accordingly, for plaintiffs to succeed they "must establish that New York's access policy has created a limited public forum intended to benefit" organizations such as Lamb's Chapel and "encom-

passing the purposes for which the organization seeks to use the school property." *Id.*

Plaintiffs, however, argue that their rights of free speech and association entitle them to access this forum for the purpose they desire. They contend that by creating an "open forum," *i.e.,* a public forum, the School District cannot place content-based restrictions on its use unless the regulations are narrowly drawn to effectuate a compelling state interest. However, as noted above, the evidence indicates that the school facilities are not public forums but rather limited public forums where access can be restricted by reasonable viewpoint-neutral regulations. The focus is not, as plaintiffs argue, on whether defendants have drawn a distinction between religious speech and nonreligious speech, but on whether the exclusion of use based on the purpose for which the group seeks to use the property is reasonable and viewpoint-neutral. Plaintiffs' argument is therefore misplaced.

Further, plaintiffs contend that "Schoener's sole discretion in determining what is or is not overly religious and therefore permissible or not permissible speech, constitutes unconstitutional unbridled discretion on the part of a government official." Complaint para. 22. The plaintiffs, however, did not produce evidence that Schoener made any such determinations. Indeed, Schoener testified that she did not and does not determine if a use would constitute a "religious purpose," and, her letter of January 18, 1989 to Steigerwald indicates no more than that she sought, on behalf of the Board, more information for the Board's determination. Plaintiffs offer no evidence calling into question the reasonableness or propriety of the School District's application review process.

Plaintiffs have not presented sufficient evidence to create a fair ground for litigation as to whether the School District has by practice allowed organizations of similar character to Lamb's Chapel, or, for that matter, any organizations, to use its facilities for religious purposes, thereby opening this forum to plaintiffs. Evidence offered

on this point included proof that the Salvation Army Youth Band performed "God Bless America,"[6] Pl.Exs. 11a, 24, and that the Southern Harmonize Gospel Singers sang gospel music, including the song "Amazing Grace." Pl.Exs. 12a, 12b. There was also proof that the Family Counseling Service ("FCS"), affiliated with the Hampton Council of Churches, sponsored a concert by Billy Taylor. Pl.Exs. 9a, 9b. The Director of Development of the FCS, Ruth Bragarnick, testified that the FCS is a partially government-funded, non-profit, non-sectarian organization, and that the concert was to raise funds for counseling services offered by the FCS to communities on eastern Long Island. In addition, plaintiffs offered testimony that the lecturer on parapsychology from the Mind Center, Jerry Huck ("Huck"), discussed, among other things, spiritual growth, channeling, out-of-body experiences, and kundalini and the centers of the body, and referred to God and Jesus Christ at some point in his lecture. Huck, however, testified that his lectures involved scientific topics only, based on such things as analytic and quantum physics. And the application submitted by the Center Moriches Public Library for the lecture series specified that the purpose of the lectures was "Educational." Pl.Ex. 16. Upon review of the record, this Court finds that plaintiffs have not sufficiently shown that defendants have a practice of permitting use by any organization for religious purposes.

■ Plaintiffs also argue that defendants have violated their rights to equal protection by imposing a content-based restriction in a public forum. Plaintiffs contend that strict scrutiny analysis should be applied since defendants base the exclusion on a suspect classification (religion), infringing on fundamental rights (freedom of speech, freedom of association, and free exercise of religion). This argument is without merit for two reasons. First, as noted above, the school facilities are not public forums. And second, more importantly, as noted above, the evidence shows that all organizations have been equally prohibited from using the facilities for religious purposes. *See Brandon,* 635 F.2d at 980 ("[S]ince all religious groups are equally denied access, any equal protection argument lacks merit.").

It is also clear that plaintiffs cannot base their right to access on their constitutional right to free exercise of religion since this is neither a situation where the state has asserted coercive restraints on religious observation nor a situation where special circumstances require the state to accommodate the plaintiffs' religious needs. *See id.* at 976–78.

Nor can plaintiffs base their right to access on the Supreme Court's decision in *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), and the Establishment Clause. Plaintiffs argue that religious use of the School District's open forum is required by *Widmar,* and that the Establishment Clause does not justify banning religious speakers from an open forum under the three-prong test of *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971),[7] because the "School District's policy and actions have the 'primary effect' of advancing nonreligion and inhibiting religion," and the "government does not show neutrality towards religion with its hostile act of banning all religious expression from an open forum." Brief in Support of Plaintiffs' Motion for a Preliminary Injunction, at 12–15, 22–23. This Court does not agree with either argument. Again, plaintiffs premise their arguments on their mistaken view that the school facilities are public forums as defined by the Supreme Court in *Hazelwood School District, supra.* Further,

---

6. The performance was part of a joint concert with the Center Moriches High School Band to raise money for a scholarship for a school band member and for sending a needy child to summer camp. The performance of "God Bless America" was, in fact, performed by the combined bands. Pl.Ex. 24.

7. Under this three-prong test, a governmental policy will not offend the Establishment Clause if: (1) it has a secular purpose; (2) its principal or primary effect is one that neither advances nor inhibits religion; and (3) it does not foster an excessive government entanglement with religion. *Lemon,* 403 U.S. at 612–13, 91 S.Ct. at 2111.

plaintiffs ignore the Second Circuit's view that *Widmar* does not control in this type of situation.[8]

■ The Constitution does not require a public school district to open its school buildings to indiscriminate use where the state has by policy and practice circumscribed availability through reasonable and viewpoint-neutral regulations. Plaintiffs have not sufficiently shown that the situation is otherwise so as to justify the preliminary injunction.

## CONCLUSION

Based on the reasons above, since plaintiffs have not shown either a substantial likelihood of success on the merits or sufficiently serious questions going to the merits, their request for a preliminary injunction is denied.

SO ORDERED.

## ADDENDUM

New York Education Law § 414 provides in pertinent part:

1. Schoolhouses and the grounds connected therewith and all property belonging to the district shall be in the custody and under the control and supervision of the trustees or board of education of the district.... Such regulations shall provide for the safety and security of the pupils and shall not conflict with the provisions of this chapter and shall conform to the purposes and intent of this section and shall be subject to review on appeal to the commissioner of education as provided by law. The trustees or board of education of each district may, subject to regulations adopted as above provided, permit the use of the schoolhouse and rooms therein, and the grounds and other property of the district, when not in use for school purposes or when the school is in use for school

purposes if in the opinion of the trustees or board of education use will not be disruptive of normal school operations, for any of the following purposes:

(a) For the purpose of instruction in any branch of education, learning or the arts.

(b) For public library purposes, subject to the provisions of this chapter, or as stations of public libraries.

(c) For holding social, civic and recreational meetings and entertainments, and other uses pertaining to the welfare of the community; but such meetings, entertainment and uses shall be non-exclusive and shall be open to the general public.

(d) For meetings, entertainments and occasions where admission fees are charged, when the proceeds thereof are to be expended for an educational or charitable purpose; but such use shall not be permitted if such meetings, entertainments and occasions are under the exclusive control, and the said proceeds are to be applied for the benefit of a society, association or organization of a religious sect or denomination, or of a fraternal, secret or exclusive society or organization other than organizations of veterans of the military, naval and marine service of the United States and organizations of volunteer firefighters or volunteer ambulance workers.

(e) For polling places for holding primaries and elections and for the registration of voters and for holding political meetings. But no meetings sponsored by political organizations shall be permitted unless authorized by a vote of a district meeting, held as provided by law, or, in cities by the board of education thereof. Except in cities, it shall be the duty of the trustees or board of education to call a special meeting for such purpose upon the petition of at least ten

8. In *Deeper Life* the Second Circuit stated:
*Widmar,* however, does not control the result here. As the Supreme Court pointed out in a later case, in *Widmar* it had "noted that a university campus, at least as to its students, possesses many of the characteristics of a traditional public forum," thereby subjecting attempts at regulating use to the most exacting constitutional standards as to the forum's intended beneficiaries.
*Deeper Life,* 852 F.2d at 679 (quoting *Cornelius,* 473 U.S. at 803, 105 S.Ct. at 3449–50). The court instead chose to apply what it termed a "limited public forum analysis," as discussed previously.

per centum of the qualified electors of the district. Authority so granted shall continue until revoked in like manner and by the same body as granted.

(f) For civic forums and community centers. Upon the petition of at least twenty-five citizens residing within the district or city, the trustees or board of education in each school district or city shall organize and conduct community centers for civic purposes, and civic forums in the several school districts and cities, to promote and advance principles of Americanism among the residents of the state. The trustees or board of education in each school district or city, when organizing such community centers or civil [sic] forums, shall provide funds for the maintenance and support of such community centers and civic forums, and shall prescribe regulations for the conduct and supervision, provided that nothing herein contained shall prohibit the trustees of such school district or the board of education to prescribe and adopt rules and regulations to make such community centers or civic forums self-supporting as far as practicable. Such community centers and civic forums shall be at all times under the control of the trustees or board of education in each school district or city, and shall be non-exclusive and open to the general public.

(g) For classes of instruction for mentally retarded minors operated by a private organization approved by the commissioner of education.

(h) For recreation, physical training and athletics, including competitive athletic contests of children attending a private, nonprofit school.

(i) To provide child care services during nonschool hours, provided that the cost of such care shall not be a school district charge but shall be paid by the person responsible for the support of such child; the local social services district as authorized by law; or by any other public or private voluntary source or any combination thereof.

N.Y.Educ.Law § 414 (McKinney 1988 & Supp.1990).