**LAMB'S CHAPEL and John Steigerwald, Plaintiffs,**

**v.**

**CENTER MORICHES UNION FREE SCHOOL DISTRICT and Louise Tramontano in her Official Capacity as President of the Board of Education for Center Moriches Schools, Defendants.**

**No. CV 90–0500.**

United States District Court, E.D. New York.

July 15, 1991.

Migliore & Infranco, P.C. by Joseph P. Infranco, Commack, N.Y., for plaintiffs.

Dranitzke, Lechtrecker & Trabold by Harold G. Trabold, Patchogue, N.Y., for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs Lamb's Chapel and John Steigerwald ("Steigerwald") brought an action before this Court for declaratory and injunctive relief against the Center Moriches Union Free School District ("School District") and Louise Tramontano, in her official capacity as President of the School District's Board of Education (the "Board"), because of defendants' refusal to allow plaintiffs to use the School District's facilities during nonschool hours for the purpose of showing a film series by Dr. James Dobson, entitled "Turn Your Heart Towards Home" (the "film series"). On May 16, 1990, this Court issued a Memorandum and Order denying plaintiffs' request for a preliminary injunction on the basis that plaintiffs did not show either a substantial likelihood of success on the merits or sufficiently serious questions going to the merits of their case. *Lamb's Chapel v. Center Moriches School Dist.*, 736 F.Supp. 1247, 1254 (E.D.N.Y.1990).

Thereafter, Lamb's Chapel appealed that decision to the Second Circuit Court of Appeals. The appeal was withdrawn and the case has been returned to this Court at the suggestion of the Staff Counsel for the Second Circuit for final disposition, and to afford this Court an opportunity to reconsider its denial of injunctive relief in light of *Board of Education of the Westside Community Schools v. Mergens,* —— U.S. ——, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990). Currently before the Court are plaintiffs' motion for summary judgment and defendants' cross-motion for same, both pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons stated below, defendants' motion is hereby granted and plaintiffs' motion is denied.

## BACKGROUND

The undisputed facts, consisting of testimony and exhibits presented to the Court during the hearing on plaintiffs' motion for a preliminary injunction, are as follows:

Lamb's Chapel is an evangelical Christian church located in Center Moriches, New York, and incorporated under New York's Not–For–Profit Corporation Law; Steigerwald is its pastor. Since November of 1988, Steigerwald has submitted to defendants three applications on behalf of Lamb's Chapel to use the School District's high school facilities.

The first application, dated November 19, 1988, stated that the purpose for which Lamb's Chapel sought to use the facilities was "to conduct Sunday a.m. service and Sunday School, Nursery, etc." Plaintiffs' Exhibit 5a [hereinafter Pl.Ex. #]. According to Steigerwald, this application was rejected because of the religious content of the film series that plaintiffs wished to show. Subsequently, by the second and third applications, dated December 16, 1988 and October 11, 1989, respectively, plaintiffs sought to use the high school auditorium for one evening for five consecutive weeks to show the film series. For purposes of this action, plaintiffs' conceded at the hearing that the film series is of a religious nature and the showing is for a religious purpose.[1]

Following an initial review of the December 16 application, by letter dated January 18, 1989, Alice Schoener ("Schoener"), the School District's business manager and district clerk wrote to Steigerwald on behalf

---

1. In this regard, the October 11 application notes that the film series is a "family oriented movie from a Christian perspective." Pl.Ex. 7a.

of the Board to express the School District's concern that plaintiffs' use of the facilities appeared to be for a religious purpose. The letter indicated that the School District is

> bound by education law concerning the use of school facilities by religious organizations. Fortunately, we have not, to date, been put to the test of determining when a use of the facility by one of our local churches would constitute "religious purposes." I am hard pressed to determine from your description, what the five-part movie would represent, but suspect that it would certainly have religious connotations.
>
> The district has not, in the past, allowed the high school auditorium to be used by any group primarily for its own purposes.
>
> . . . .
>
> If you care to pursue your request, please provide a more detailed description of your proposed use (including a brochure describing the film). . . . I will be happy to present your request to the Board of Education at our February meeting.

Pl.Ex. 6b. After receiving and reviewing the brochure, Schoener again wrote to Steigerwald on behalf of the Board, by letter dated February 8, 1989, rejecting the application because the film "appear[ed] to be church related." Pl.Ex. 6d. The third application, substantially similar to the second, was denied on the same basis.

According to defendants, the legal basis for refusing the requests was that the use of the facilities for religious purposes would violate § 414 of the New York Education Law [2] and Rule No. 7 of the School District's Rules and Regulations for Community Use of School Facilities ("Rule No. 7"),[3] which govern the use of school facilities.

Plaintiffs argue, however, that during 1987 and 1988 other organizations were allowed to use the school facilities, and that some did so for religious purposes.[4] In particular, plaintiffs point to performances by the Salvation Army Youth Band and the Southern Harmonize Gospel Singers, and a lecture series by the Mind Center, purportedly a New Age religious group.[5] Complaint at para. 18. Because of this practice, plaintiffs contend that they too should be allowed to use the school facilities for religious purposes. Plaintiffs argue that defendants have violated their first and fourteenth amendment rights of freedom of speech, freedom of association and free exercise of religion and their fourteenth amendment right to equal protection.

---

2. See Addendum.

3. Rule No. 7 provides that "[t]he school premises shall not be used by any group for religious purposes." Pl.Ex. 5a. The Rules and Regulations further provide that groups requesting to use the school facilities must be composed predominantly of residents and/or students from the school community, although an exception is made for outside not-for-profit organizations, but only if the applicant demonstrates that there is a benefit to the school community. Rule No. 7.

4. Plaintiffs list organizations that have been allowed to use the school facilities in the years 1987 and 1988:

> A New Age religious group known as the "Mind Center"
> Southern Harmonize Gospel Singers
> Salvation Army Youth Band
> Hampton Council of Churches' Billy Taylor Concert
> Center Moriches Co-op Nursery School's Quilting Bee
> Manorville Humane Society's Chinese Auction
> Moriches Bay Power Squadron
> Unkechaug Dance Group
> Paul Gibson's Baseball Clinic
> Moriches Bay Civic Association
> Moriches Chamber of Commerce's Town Fair Day
> Center Moriches Drama Club
> Center Moriches Music Award Associations' "Amahl & the Night Visitors"
> Saint John's Track and Field Program
> Girl Scouts of Suffolk county
> Cub Scouts Pack 23
> Boy Scout Troop # 414

(Plaintiffs' Brief in Support of Motion for Preliminary Injunction, at 7).

5. The lecture series was sponsored by the Center Moriches Public Library. The series, entitled "Psychology and the Unknown," was on parapsychology and transpersonal psychology and dealt with eastern mysticism and metaphysics.

Defendants contend that they may properly refuse to allow any group to use the facilities for religious purposes. In this respect, they maintain that they would not and did not knowingly allow any organization to use the school facilities for religious purposes. In addition, they argue that allowing plaintiffs to use the facilities for religious purposes would violate the Establishment Clause of the First Amendment, as well as § 414 of the New York Education Law and the School District's Rule No. 7.

As previously stated, on May 16, 1990, this Court denied plaintiffs' motion for a preliminary injunction, finding that: (1) the School District, by enforcing restrictions on access imposed by state statute and by its own regulations, created a limited public forum; (2) as such, "'exclusion of uses—even if based upon subject matter or the speaker's identity—need only be reasonable and viewpoint-neutral to pass constitutional muster.'" *Lamb's Chapel*, 736 F.Supp. at 1251 (quoting *Deeper Life Christian Fellowship, Inc. v. Board of Educ. of the City of New York*, 852 F.2d 676, 679–80 (2d Cir.1988) (citations omitted)); (3) plaintiffs had failed to demonstrate sufficiently that the School District had a practice of permitting use of school facilities by any organizations for religious purposes; and (4) there was no equal protection violation where the evidence showed that all organizations had been prohibited from using the school facilities for religious purposes. In short, this Court determined that "[t]he Constitution does not require a public school district to open its school buildings to indiscriminate use where the state has by policy and practice circumscribed availability through reasonable and viewpoint-neutral regulations." *Id.* at 1254.

## DISCUSSION

### A. *Effect of Mergens*

In 1990, the Supreme Court heard the case of *Board of Education of the Westside Community Schools v. Mergens*, —— U.S. ——, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990). In *Mergens*, the Supreme Court was called upon to decide whether West-side High School (the "School" or "Westside") was prohibited by the Equal Access Act ("EAA" or the "Act"), 98 Stat. 1302, 20 U.S.C. §§ 4071–74, from "denying a *student religious group* permission to meet on school premises during noninstructional time, and if so, whether the Act, so construed, violates the Establishment Clause of the First Amendment." *Mergens*, 110 S.Ct. at 2362 (emphasis added).

The facts involved in *Mergens* are simple and differ substantially from the facts before this Court. In *Mergens*, a group of high school students brought suit against the School District after the School Board upheld Westside's denial of Mergens's request to organize, for the purpose of enabling voluntary student members to study the Bible and to pray together, a Christian Club having the same privileges and conditions as other student groups at Westside, with the exception that it would not have a faculty sponsor. The School, which is a public secondary school and which receives federal financial assistance, denied Mergens's request primarily on the basis that the formation of a religious club would violate the Establishment Clause.

Respondents, current and former Westside students, by and through their parents as next friends, brought an action in the United States District Court for the District of Nebraska seeking declaratory and injunctive relief. Respondents argued that the denial of Mergens's request to form the proposed club violated the EAA "which prohibits public secondary schools that receive federal financial assistance and that maintain a 'limited open forum' from denying 'equal access' to students who wish to meet within the forum on the basis of the content of the speech at such meetings." *Mergens*, 110 S.Ct. at 2363 (citing 20 U.S.C. § 4071(a)). Respondents also contended that the School Board's actions deprived them of their first and fourteenth amendment rights of freedom of speech, association, and the free exercise of religion.

The district court held for the petitioners on the basis that the Act did not apply to Westside because, the district court determined, all of Westside's student clubs were related to the School's curriculum and,

hence, Westside had not created a "limited open forum." *Id.* The United States Court of Appeals for the Eighth Circuit reversed, holding that the district court was incorrect in determining that all of Westside's student clubs were related to the curriculum. Rather, the Eighth Circuit concluded that because student clubs existed at the school which were noncurriculum related, Westside had created a "limited open forum" as defined by the Act and, therefore, "the Act applied to 'forbi[d] discrimination against [respondent's] proposed club on the basis of its religious content.' " *Id.* (quoting *Mergens v. Board of Educ. of Westside Community Schools*, 867 F.2d 1076, 1079 (8th Cir.1989), *aff'd sub nom. Board of Educ. of Westside Community Schools v. Mergens*, — U.S. —, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990)).

Under the EAA, a "limited open forum" exists when a public secondary school allows the opportunity for at least one noncurriculum related student group to meet on school grounds during noninstructional hours. 20 U.S.C. § 4071(b). After a lengthy discussion about the meaning of the term "noncurriculum related student group," the Supreme Court defined the term to include "any student group that does not *directly* relate to the body of courses offered by the school." *Mergens*, 110 S.Ct. at 2366 (emphasis in original). The Court noted that a student group is directly related to a school's curriculum if the subject matter of the group is currently taught, will be taught soon, is required by school, or if academic credit is given for participation in the group in question. *Id.*

The Supreme Court affirmed the court of appeals and held that because Westside had created a "limited open forum" the denial of the request to form a Christian club constituted a denial of "equal access" under the EAA. *Id.* at 2370. The Court found that by enacting the EAA in 1984, Congress extended the holding of *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), to public secondary schools. In *Widmar*, the Supreme Court determined that a state university regulation that prohibited students from using university facilities for religious purposes was invalid on free speech grounds. *Widmar*, 454 U.S. 263, 102 S.Ct. 269. The Supreme Court held that an " 'equal access' policy would not violate the Establishment Clause," *id.* at 271–74, 102 S.Ct. at 275–76, under the three-prong test set out in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).[6]

Relying on its definition of "noncurriculum related student groups," the *Mergens* Court affirmed the Eighth Circuit's finding that one or more of such groups existed at Westside and, therefore, Westside had created a "limited open forum" under the Act. 110 S.Ct. at 2368–70. Accordingly, the Court determined that the Act prohibited Westside from "discriminating, based on the content of the students' speech, against students who wish to meet on school premises during noninstructional time." *Id.* at 2370.

The Supreme Court found no merit in petitioners' argument that the Court's interpretation of the EAA wrested control of school affairs from local school boards. The Court reasoned that school districts could sidestep the EAA by "choos[ing] to structure its course offerings to avoid the Act's obligations...." *Id.* at 2367. Further, the Supreme Court noted that, under the Act, schools remain free to "prohibit meetings that would 'materially and substantially interfere with the orderly conduct of educational activities within the school.' " *Id.* (quoting 20 U.S.C. § 4071(c)(2) (additional citation omitted)). Lastly, the Court pointed out that school districts that wished to avoid the Act's mandates could do so by refusing federal funding. *Id.*

The Supreme Court concluded that the School's refusal to allow respondents to form a Christian club denied them "equal access" under the EAA. *Id.* at 2370. It is

---

**6.** Under this three-prong test, a governmental policy will not offend the Establishment Clause if: (1) it has a secular purpose; (2) its principal or primary effect is one that neither advances nor inhibits religion; and (3) it does not foster excessive government entanglement with religion. *Lemon*, 403 U.S. at 612–13, 91 S.Ct. at 2111.

significant that the Supreme Court decided solely on statutory grounds. In fact, the Court stated, "[W]e need not decide—and therefore express no opinion on—whether the First Amendment requires the same result." *Id.*

The Court addressed the issue of whether the Act, as interpreted, "violates the Establishment Clause of the First Amendment, as applied to the States through the Fourteenth Amendment." *Id.* Underlying this issue was petitioner's argument that officially sanctioning the proposed club would, in effect, result in a violation of the Establishment Clause. The Supreme Court disagreed. Applying the logic of *Widmar,* where the Court found that a policy allowing equal access to university facilities to religious groups did not violate the Establishment Clause, 454 U.S. at 271–75, 102 S.Ct. at 275–77, a plurality of the *Mergens* Court concluded that the EAA was capable of withstanding the constitutional rigors of *Lemon. Id.* 110 S.Ct. at 2371 (plurality opinion). Justices O'Connor, White, and Blackmun grounded their determination on the fact that the Act not only prohibited discrimination of religious speech but also of "political, philosophical or other" speech. Accordingly, they attributed a secular purpose to the Act. *Id.* (citations omitted).

Likewise, the plurality found that the Act did not have the primary effect of advancing religion and proffered three grounds on which to rest their conclusion. First, Justice O'Connor stated that "there is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, with the Free Speech and Free Exercises Clauses protect." *Id.* at 2372 (plurality) (emphasis in original) (reasoning that high school students were sufficiently capable of understanding the difference between a school's "endorsing student speech" and "merely permit[ting]" it). Second, support was found in the terms of the Act itself which require meetings to be held when classes are not in progress, 20 U.S.C. § 4071(b), and which restricts school officials from participating at the meetings of student religious groups. 20 U.S.C. § 4071(c).

Third, O'Connor determined that, given the vast array of officially sanctioned student groups, the fear of "official endorsement of or preference for religion or a particular religious belief" was unfounded. *Id.* at 2372–73.

Finally, Justice O'Connor found that compliance with the Act did not create a possibility of excessive entanglement between government and religion. The plurality looked to the boundaries of the Act itself which prohibit school "sponsorship" of religious clubs, 20 U.S.C. § 4071(c)(2), and which, for example, forbid faculty members from participating in any such meetings. 20 U.S.C. § 4071(c)(3) (although a faculty member may be assigned for "custodial purposes").

As noted, the case at bar was returned to this Court at the suggestion of the Second Circuit's Staff Counsel because of the Supreme Court's decision in *Mergens.* Plaintiffs argue that *"Mergens* obviously changes the constitutional landscape as far as equal access for religious speech on public school grounds goes." Plaintiffs' Supplementary Memorandum in Support of Motion for Summary Judgment at 10. Plaintiffs ask this Court to apply the reasoning of *Mergens* to the facts before this Court. In contrast, defendants contend that *Mergens* is without effect on this case because the Supreme Court's decision rested entirely on the EAA. Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment at 2. Defendants correctly observe that the question to be decided by this Court, post-*Mergens,* "is not whether the school district *may,* under circumstances where its policy, practice or state law otherwise provide for such access, open its forum to religious use, but whether it *must* open its forum to such use in the face of a policy, practice and in New York a state legislative enactment (§ 414 [of the] Education Law) which specifically prohibits such use." *Id.* at 4 (emphasis in original). This Court finds no such mandate in the *Mergens* decision.

 Plaintiffs again put forth the argument that the School District has created an open forum by policy and practice. This

Court previously determined that "by enforcing restrictions on access imposed by state statute and by its regulations, the School District has created limited public forums." *Lamb's Chapel*, 736 F.Supp. at 1251. In so finding, the Court specifically rejected plaintiffs' argument that defendants created an "open forum" merely by allowing groups unrelated to the School District to meet on school district premises. Specifically, the Court ruled that the School District "has not by policy or practice either opened its facilities to indiscriminate use by the general public or some segment of the public." *Id.*

This is noteworthy because of the Supreme Court's discussion in *Mergens* about the importance of the distinction between the two designations. The Supreme Court pointed out that the EAA is specifically limited to schools that maintain a "limited open forum." *Mergens*, 110 S.Ct. at 2363 (citing 20 U.S.C. § 4071(a)). In fact, the Court stated that:

> [T]he Act itself neither uses the phrase "limited public forum" nor so much as hints that the doctrine is somehow "incorporated" into the words of the statute. The operative language of the statute, 20 U.S.C. § 4071(a), of course, refers to a "limited open forum," a term that is specifically defined in the next subsection, § 4071(b). Congress was presumably aware that "limited public forum," as used by the Court, is a term of art ... and had it intended to import that concept into the Act, one would suppose that it would have done so explicitly. Indeed, Congress' deliberate choice to use a different term—and to define that term—can only mean that it intended to establish a standard different from the one established by our free speech cases.

*Id.* 110 S.Ct. at 2367–68 (citations omitted).

The significance of the Supreme Court's language rests in its application of the EAA to the Court's determination that petitioners were in violation of the Act. The situation before this Court is readily distinguishable where defendants have created a limited public forum to which the Act does not apply.

Moreover, nothing in plaintiffs' argument convinces this Court to stretch the holding in *Mergens* to accommodate the facts at issue. In *Mergens*, the Supreme Court adopted the logic of *Widmar*. Underlying that reasoning was the *Widmar* Court's decision to limit the holding to "persons *entitled* to be [on the campuses of State universities]." *Widmar*, 454 U.S. at 268, 102 S.Ct. at 274 (emphasis added). Likewise, *Mergens* is distinguishable from the present case in that *Mergens*, like *Widmar*, is addressed to students "entitled" to be on school premises.

This Court is presented with a very different scenario. Plaintiffs, who are *not* students, are seeking to use school facilities during nonschool hours. The Second Circuit has specifically held that, at least in New York, public schools "are not, as to the general community, traditional public fora." *Deeper Life*, 852 F.2d at 679 (citations omitted). As noted, under circumstances where a school district creates a "limited public forum," as is the situation here, "property remains a nonpublic forum as to all unspecified uses, ... and exclusion of uses—even if based upon subject matter or the speaker's identity—need only be reasonable and viewpoint-neutral to pass constitutional muster." *Deeper Life*, 852 F.2d at 679–80. Nothing the School District has done, by its policy or its practice, belies this standard.

Significantly, after the Supreme Court rendered its decision in *Mergens*, the Second Circuit decided the case of *Travis v. Owego-Appalachin School District*, 927 F.2d 688 (2d Cir.1991), a case involving the same issue as the one before this Court.[7] In *Travis*, the Second Circuit ruled that a school district's denial of plaintiff Birthright of Owego, Inc.'s application to use the school district's facilities for the purpose of a fundraiser involving "religious

---

7. The Court notes that the Second Circuit cites *Mergens* for only the proposition that an open-door policy that "allow[s] religious speech does not 'endorse' or 'establish' a religion." *Travis*, 927 F.2d at 694 ((citing *Mergens*, 110 S.Ct. at 2370–73, 2377–78) (plurality and concurring opinions) (additional citation omitted)).

and/or political activity" constituted a violation of the Free Speech and Establishment Clauses. 927 F.2d at 694. The *Travis* court, which found that defendants had created a limited public forum, based its conclusion on the school district's past practice which included permitting school facilities to be used for a religious Christmas program. As such, defendant's selective denial of Birthright's application was not viewpoint-neutral and, therefore, was unconstitutional. *Id.* at 692–94. In contrast, this Court ruled that the Center Moriches School District's past practice has prohibited such use in all cases.

■ However, this Court finds the most compelling support for its decision in the language of *Mergens* itself which states, "[b]ecause we rest our conclusion on statutory grounds, we need not decide—and therefore express no opinion on—whether the First Amendment requires the same result." *Mergens*, 110 S.Ct. at 2370. As defendants accurately assert, the *Mergens* decision rested on an act of Congress, permitting secondary school students to conduct religious activities on school premises. Neither Congress nor the Supreme Court has seen fit to require a school district to open its doors to nonstudents who wish to use school facilities for the purpose of conducting religious activities within a school. Therefore, this Court finds that if the intended use of school facilities is not required or authorized by statute, there is no constitutional right to such use where a school district has not, by policy or practice, permitted a similar use in the past. *See Mergens*, 110 S.Ct. at 2370; *Travis*, 927 F.2d at 692.

### B. *Summary Judgment*

■ A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The burden is on the moving party to clear-

ly establish the absence of a genuine issue as to any material fact. *Donahue*, 834 F.2d at 57. In addition, the district court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). However, the moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings ... [but] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court notes that an unresolved factual issue is one that a reasonable fact finder could decide in favor of either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Currently, both parties move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Having found that *Mergens* is not controlling, the Court turns to address these motions.

The parties agree that the case is to be decided on the basis of the undisputed facts which consist of testimony and exhibits presented to the Court during the hearing on the motion for a preliminary injunction. In this Court's May 16, 1990 decision, the Court determined that "plaintiffs have not sufficiently shown that defendants have a practice of permitting use by any organization for religious purposes." *Lamb's Chapel*, 736 F.Supp. at 1253. In the absence of such a finding, summary judgment is appropriate. *See Travis*, 927 F.2d at 692. As both the Supreme Court and the Second Circuit have noted, "[t]he First Amendment ... does not guarantee unlimited access to government-owned property for purposes of expression. Government may thus properly regulate such access depending on the nature of the property at issue." *Id.* at 691 (citing *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 799–800, 105 S.Ct. 3439, 3447–3448, 87 L.Ed.2d 567 (1985)).

Based on the record, this Court determined that the School District's facilities are "limited public forums." *Lamb's Chapel*, 736 F.Supp. at 1252. The Court based its determination, in part, on the fact

that, although § 414 of the New York Education Law enumerates nine purposes for which public school facilities may be used by the general public, nowhere does it include religious worship or instruction. *See* § 414; *Deeper Life*, 852 F.2d at 680 (stating that critical to determining whether the state has created a limited public forum is the state's intent in establishing the forum). Moreover, Rule No. 7 explicitly proscribes using school facilities for religious purposes, which this Court considers a strong indication of an intent to limit the availability of such property.

In a case directly on point, the Second Circuit stated that "in a limited public forum, government is free to impose a blanket exclusion on certain types of speech...." *Travis*, 927 F.2d at 692. However, the Second Circuit cautioned that once a limited public forum is opened to a particular type of speech, "selectively deny[ing] access for other activities of th[e] same genre" is forbidden. *Id.*

■ In the case at bar, this Court specifically determined that plaintiffs have not presented sufficient evidence to create a fair ground for litigation as to whether the School District has by practice allowed organizations of similar character to Lamb's Chapel to use its facilities for religious purposes. Moreover, nothing in plaintiff's moving papers persuades the Court to decide otherwise. Because the School District has not, by policy or practice, opened its doors to groups akin to Lamb's Chapel, this Court holds that the School District's denial of plaintiffs' applications to show the film series is viewpoint-neutral and, hence, constitutional. *See id.* at 694.

## CONCLUSION

The Court, having found that no genuine issue exists to be decided at trial, grants defendants' motion for summary judgment. Accordingly, plaintiffs' motion is denied. The Clerk of the Court is directed to close the file in this case.

SO ORDERED.

## ADDENDUM

Section 414 of the New York Education Law provides in pertinent part:

1. Schoolhouses and the grounds connected therewith and all property belonging to the district shall be in the custody and under the control and supervision of the trustees or board of education of the district. The trustees or board of education may adopt reasonable regulations for the use of such schoolhouses, grounds or other property, all portions thereof, when not in use for school purposes, or when the school is in use for school purposes ... for such other public purposes as are herein provided ...:

(a) For the purpose of instruction in any branch of education, learning or the arts.

(b) For public library purposes, subject to the provisions of this chapter, or as stations of public libraries.

(c) For holding social, civic and recreational meetings and entertainments, and other uses pertaining to the welfare of the community; but such meetings, entertainment and uses shall be non-exclusive and shall be open to the general public.

(d) For meetings, entertainments and occasions where admission fees are charged, when the proceeds thereof are to be expended for an educational or charitable purpose; but such use shall not be permitted if such meetings, entertainments and occasions are under the exclusive control, and the said proceeds are to be applied for the benefit of a society, association or organization of a religious sect or denomination, or of a fraternal, secret or exclusive society or organization other than organizations of veterans of the military, naval and marine service of the United States and organizations of volunteer firefighters or volunteer ambulance workers.

(e) For polling places for holding primaries and elections and for the registration of voters and for holding political meetings.

(f) For civic forums and community centers.

(g) For classes of instruction for mentally retarded minors operated by a private organization approved by the commissioner of education.

(h) For recreation, physical training and athletics, including competitive athletic contests of children attending a private, nonprofit school.

(i) To provide child care services during non-school hours....

N.Y.Educ.Law § 414 (McKinney 1988 & Supp.1991).