Jim **WALLACE,** Pastor, and Northgate Community Church, Plaintiffs,

v.

**WASHOE COUNTY SCHOOL DISTRICT,** Defendant.

No. CV–N–88–302–HDM.

United States District Court, D. Nevada.

Nov. 3, 1988.

Timothy P. Post, Reno, Nev., James M. Braden, David A. French, Manassas, Va., Leslie Gray, Sparks, Nev., for plaintiffs.

C. Robert Cox and Paul J. Anderson, Walther, Key, Maupin, Oats, Cox, Lee & Klaich, Reno, Nev., for defendant.

## ORDER

McKIBBEN, District Judge.

The plaintiffs, Northgate Community Church ("Northgate") and Jim Wallace, pastor of the church, have filed a civil rights action against the defendant Washoe County School District ("WCSD") seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 (1982). This court has jurisdiction under 28 U.S.C. § 1331 (1982).

Northgate seeks to enjoin the WCSD from prohibiting Northgate's use of the McQueen High School for regular and permanent Sunday church services and Sunday school. Northgate is an unincorporated association which has approximately one hundred (100) members and presently meets for Sunday services at the Oddfellows Hall in Reno, Nevada.[1] The WCSD is a public school district created under the laws of the State of Nevada.

On September 25, 1987 Wallace met with Ron Pagni, the vice-principal of the McQueen High School, and inquired about the possibility of renting or using a portion of McQueen High School for Sunday services. Pagni advised plaintiff that the policy of WCSD was not to allow the use of school facilities for any religious purposes.

WCSD has a written policy which permits use of school facilities by community groups. This official policy was originally adopted November 11, 1966. When it was revised on June 15, 1982, the policy provided in pertinent part: "Community groups shall be permitted and encouraged to use school facilities for worthwhile purposes provided that: ... the use thereof is not for a religious purpose." (WCSD Administrative Regulation 1330.) The latest revi-

1. There is no indication in the record that Northgate cannot continue to conduct services at the Oddfellows Hall as long as it wishes to do so.

sion of the policy has deleted the language "the use thereof is not for religious purposes." Northgate and WCSD have agreed that even though Administrative Regulation 1330 does not expressly bar the use of the WCSD facilities for religious purposes, the WCSD's interpretation of the law would exclude groups from using WCSD facilities for religious purposes. On April 20, 1988, counsel for Northgate wrote Dr. Marvin Moss, the superintendent of the WCSD and requested that this policy be revised to permit Northgate to use the school facilities for its church services. WCSD did not respond. Northgate, instead of filing a written application with the WCSD for use of the facilities, filed this lawsuit.

In this action Northgate seeks the following relief: (1) an order of the court declaring WCSD Administrative Regulation 1330 unconstitutional and void and prohibiting WCSD from enforcing the regulation; (2) an order requiring WCSD to permit plaintiffs to use the McQueen High School facility for religious purposes during non-school hours; (3) the entry of an order prohibiting WCSD from discriminating against religious groups use of WCSD facilities during non-school hours; and (4) an order prohibiting WCSD from closing the "open forum" created by the Administrative Regulation 1330.

Northgate contends that WCSD's policy of renting space in the school buildings to various community organizations for meetings has created an "open forum." Northgate argues once the WCSD has created an "open forum", a policy to prohibit the use of these public buildings for Northgate's Sunday worship and Sunday school services constitutes speech content-based discrimination and violates Northgate's rights of free speech and assembly guaranteed under the First and Fourteenth Amendments to the Constitution. WCSD contends there is a compelling interest in maintaining a separation of church and state under the establishment clauses of both the Federal and State Constitution.

To obtain injunctive relief, Northgate must make a clear showing of either " '(1)

probable success on the merits *and* possible irreparable injury *or* (2) sufficiently serious questions going to the merits to make them fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.' " *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1212 (9th Cir. 1984) (*quoting Ebel v. City of Corona*, 698 F.2d 390, 392 (9th Cir.1983)) (emphasis in original); *see also Wilson v. Watt*, 703 F.2d 395, 399 (9th Cir.1983).

In order for Northgate to prevail in this action, it must be able to show its free speech will be violated if the court declines to issue the injunctive relief. If Northgate fails to establish a violation of the First Amendment, the intrusion of the courts into the management of school property would be improper. *Epperson v. Arkansas*, 393 U.S. 97, 104–105, 89 S.Ct. 266, 270–71, 21 L.Ed.2d 228 (1968). The threshold issue to be decided is whether WCSD has, by virtue of the policy it has adopted, created a "public forum." If the court concludes WCSD has created a "public forum," the second issue is whether WCSD has shown that its regulation was necessary to serve a compelling state interest and that the regulation was narrowly drawn to achieve that purpose.

██ The WCSD does not have a legal or constitutional obligation to open its school buildings to the public to permit the public to engage in free speech and association. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). When it does, however, WCSD must justify its discriminations and exclusions under appropriate constitutional standards even if the excluded activity includes religion or religious subjects. *Widmar v. Vincent*, 454 U.S. 263, 269–70, 102 S.Ct. 269, 274–75, 70 L.Ed.2d 440 (1981). Section 1330(C)(4) of the WCSD's Community Use Policy states the district's facilities shall be open to *"organizations* for public, literary, scientific, recreational or educational meetings, or for discussions of matters of general or public interest. . . ." (emphasis supplied). The forum created by this policy is a "public

forum" which is open to the general public and not limited to student use. As a consequence, the school district must justify its discrimination or exclusion under appropriate constitutional standards. *Widmar*, 454 U.S. at 268, 102 S.Ct. at 273.

 The WCSD contends it has a compelling interest in maintaining the separation of church and state and that this interest is derived from the establishment clauses of the United States and Nevada Constitutions. As the Supreme Court held in *Widmar*, an "equal access" policy is not incompatible with the court's establishment clause cases. *Id.* at 274, 102 S.Ct. at 276. Such a policy does not offend the establishment clause if it meets constitutional muster after the application of the three-part test set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2111–2112, 29 L.Ed.2d 745 (1971). The test is as follows: "First, the (governmental policy) must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion ...; finally, the [policy] must not foster 'an excessive government entanglement with religion.'" *Lemon*, 403 at 612–613, 91 S.Ct. at 2111–2112 (1971). The establishment clause requires state neutrality toward religion. Just because the state acts adversely to a religious institution's interests, that action is not necessarily a violation of the establishment clause. *Mueller v. Allen*, 463 U.S. 388, 393, 103 S.Ct. 3062, 3066, 77 L.Ed.2d 721 (1983).

 Considering the first prong of the test, the school district's "open forum" policy permits community organizations to use the school facility for educational, cultural, recreational and other activities during non-school hours. These activities are generally secular in nature. The school district does not support any particular organization nor does it subscribe to or reject the views of organizations who use the facilities—by creating the open forum the school does not thereby endorse or promote any of the particular ideas expressed there. *Widmar*, 454 U.S. at 271–272 n. 10, 102 S.Ct. at 275–276 n. 10. The first prong of

the *Lemon* test is met by an equal access policy.

The third prong of the *Lemon* test is also met. An equal access policy generally avoids excessive governmental entanglement with religious matters. *Widmar*, 454 U.S. at 272 n. 11, 102 S.Ct. at 275 n. 11. To hold otherwise as the court observed in *Widmar* would require the governmental institution to decide which words and activities were religious and which were not. This would require "monitoring" and would present "an impossible task in an age where many and various beliefs meet the constitutional definition of religion." *Id.*

It is the second prong of the *Lemon* test which poses the principal difficulty in this case. That prong focuses on whether an "open forum" policy would have the "primary effect" of advancing religion. What Northgate seeks here is more than use of the facility under the "open forum" for purposes of religious speech. A formal application by Northgate to the WCSD would include a request to permanently conduct church services and Sunday school at the McQueen High School. In other words, Northgate wants to convert a portion of the high school into a permanent site for its church services and activities. It wants not only to continually conduct all its business in McQueen High School, it seeks more. Northgate plans to establish the high school as its permanent place of worship. Northgate will have no other facility in which to meet, worship or conduct any of its services. McQueen High School will become the physical embodiment of the church. Northgate's request is significantly different from the requests of other organizations, such as the Boy Scouts, whose use of the school facilities is more limited. Such organizations use the facilities for meetings and social activities incident to the meetings. They do not seek to become permanently institutionalized within the school as does Northgate.

Northgate has no building site nor does it have any present plans to acquire a site or construct a church facility. The church does not intend to have any other facility—permanent or otherwise—as its principal

place of worship or conducting business. While the majority in *Widmar* suggested that no distinction should be drawn between worship and other forms of speech, it did not address the question of the appropriateness of converting a portion of a high school building into a church on a permanent basis. This is precisely the concern expressed by Justice White in his dissent in *Widmar* when he stated,

> [O]nce the distinction between speech and worship is collapsed a university that generally provides student groups access to its facilities would be constitutionally required to allow its facilities to be used as a church for the purpose of holding 'regular church services.' Similarly, although the majority opinion limits its discussion to student groups, counsel for respondents recognize that the First Amendment argument relied upon would apply equally to nonstudent groups. He recognized that respondents submission would require the University to make available its buildings to the Catholic Church and other denominations for the purpose of holding regular services, if University facilities were made available to nonstudent groups. In other words, the University could not avoid the conversion of one of its buildings into a church, as long as the religious group meets the same neutral requirements of entry—e.g., rent—as are imposed on other groups. (citations omitted).

*Widmar*, 454 U.S. 286 n. 4, 102 S.Ct. 282 n. 4.

The WCSD has made a compelling argument that the benefit Northgate would derive from the use of the WCSD's "open forum" policy would result in the primary, not incidental, advancement of religion. Although no facts have yet been developed in this case, it is a reasonable inference that Northgate could advertise its church services in the local newspaper giving the location of the church as McQueen High School. There would be nothing to prohibit high school students from reading the newspaper and concluding that there was the imprimatur of state approval on the NCC. Similarly, it is not unlikely that high school students from McQueen could become members of the church and attend church services in the high school building and draw the reasonable inference the administration supported the church. In addition, high school students who attend extracurricular activities or scheduled vocational or educational activities after school or on weekends could observe portions of the high school facility being used for church services which would include rituals, ceremonies and rites. The school district would be required to make its buildings (high schools, middle schools and grade schools) available for other denominations since Northgate's request extends to all forms of religious worship and services on a permanent basis. As the majority observed in *Widmar*, a distinguishing feature in that case was that:

> University students are, of course, young adults. They are less impressionable than younger students and should be able to appreciate that the University's policy is one of neutrality toward religion.... In light of the large number of groups meeting on campus, however, we doubt students could draw any reasonable inference of University support from the mere fact of a campus meeting place.

*Id.* at 274 n. 14, 102 S.Ct. at 276 n. 14. In the case at bar young, impressionable high school, middle school and grade school students would have greater difficulty appreciating the school district's "open forum" policy as being one of neutrality when the schools are converted into churches on a permanent and regular basis.

The decision in *Widmar* was a narrow one. *Widmar*, 454 U.S. at 277, 102 S.Ct. at 278. There is no suggestion in *Widmar* that the decision should be broadly interpreted to encompass a situation similar to the one at bar in which Northgate seeks to use the school's "public forum" policy as a basis for commencing regular and permanent church services at the McQueen High School.

Northgate's reliance on *Country Hills Christian Church v. Unified School Dist. No. 512*, 560 F.Supp. 1207 (D.Kan.1983) is misplaced. The Country Hills Church had

requested to use the school facilities for "special Sundays" and had never requested to rent the facilities on a permanent basis.

If Northgate were to become permanently institutionalized within the McQueen High School, a reasonable inference to be drawn by the public is that the school district supports the church and that the state has placed its imprimatur on a particular religion. While *Widmar* may support Northgate's position that the public school district, as well as a university, may not "enforce a content based exclusion of religious speech," *Widmar*, 454 U.S. at 277, 102 S.Ct. at 278, I do not read *Widmar* to hold that a high school which permits community organizations to use its facilities for meetings must open its doors to regular church services of all denominations on a permanent basis. Here, Northgate would enjoy more than "incidental" benefits from the "public forum" policy they urge upon this court. Having concluded that Northgate's broad request to institutionalize the church in the school would have the primary effect of advancing religion, the court reserves until a later time the question of whether WCSD's verbal policy excluding the use of school facilities for religious purposes is sufficiently narrow to not offend the establishment clause. The court's holding that WCSD has shown a compelling interest in maintaining a separation of church and state under the "establishment clauses" of both the Federal and Nevada Constitution is limited to the narrow facts of this case.

On the basis of the record presently before it, the court concludes Northgate has failed to establish that it will ultimately succeed on the merits. Northgate has failed to meet its burden of producing evidence sufficient to convince the court of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward Northgate.

Northgate's application for a preliminary injunction to be permitted to establish a permanent church site at the McQueen High School is DENIED.

It is so ORDERED.