Jim **WALLACE, Pastor, and Northgate Community Church, Plaintiffs,**

v.

**WASHOE COUNTY SCHOOL DISTRICT, Defendant.**

Nos. CV–N–88–302–BRT, CV–N–88–302–PMP.

United States District Court, D. Nevada.

Dec. 9, 1991.

---

Timothy P. Post, Reno, NV, for plaintiffs.

C. Robert Cox, Paul J. Anderson, Walther, Key, Maupin, Oats, Cox Lee & Klaich, Reno, NV, for defendant.

## ORDER ON SUMMARY JUDGMENT MOTIONS

BRUCE R. THOMPSON, District Judge.

This case presents a conflict between the free speech and establishment of religion clauses of the First Amendment. Plaintiffs, Northgate Community Church ("Northgate") and its pastor, Jim Wallace ("Wallace"), have applied to use the facilities at McQueen High School for Sunday worship services. Defendant Washoe County School District ("WCSD") denied the application because the plaintiffs' requested use is of a religious nature. Plaintiffs argue that denying Northgate use of a public high school building during non-school hours is unconstitutional content-based regulation of protected speech. WCSD argues that to permit the church to use the public school facilities for religious worship would constitute an impermissible establishment of religion and would violate the Constitutions of the United States and Nevada, state statutes and school district regulations.[1] The case is before us on cross-motions for summary judgment.

## BACKGROUND

Northgate, an unincorporated association with approximately 200 members, is located in Reno, Nevada. WCSD is a public school district created under the laws of the State of Nevada. WCSD oversees the administration of the public schools in Washoe County, including McQueen High School ("McQueen") in Reno.

In September 1987, Pastor Wallace first inquired about renting facilities at McQueen for Sunday services. Ron Pagni, McQueen's vice-principal, advised Wallace that WCSD did not allow the use of school property for religious purposes. Wallace then spoke to the Director of Student Activities, who confirmed this policy. According to WCSD, Administrative Regulation 1330 prohibits community groups from using school facilities for religious purposes, although other uses are permitted.

Plaintiffs' counsel then wrote to Dr. Marvin Moss, WCSD's superintendent, and asked that WCSD revise its policy to permit plaintiffs to use the facilities on an appropriate basis. When WCSD failed to respond, plaintiffs filed a complaint for declaratory and injunctive relief pursuant to 42 U.S.C. section 1983 and a motion for preliminary injunction. Plaintiffs seek: 1) a declaration that WCSD Administrative Regulation 1330 is unconstitutional and unenforceable; 2) an order requiring WCSD to allow use of the McQueen High School facilities by plaintiffs; 3) an order prohibiting WCSD from discriminating against the use of WCSD facilities by religious groups in non-school hours; and 4) an order prohibiting WCSD from closing the "open forum" created by Administrative Regulation 1330.

On July 14, 1988, the parties filed a stipulation that if Wallace were to formally apply to use McQueen for religious purposes, WCSD would deny the application. The stipulation states, in part:

(3) that Plaintiffs were denied the use of the McQueen High School facility because

---

1. Nev.Rev.Stat. secs. 393.071–393.0719 govern public use of school facilities. "The board of trustees of any school district may grant the use of school buildings or grounds for public, literary, scientific, recreational or educational meetings, or for the discussion of matters of general or public interest upon such terms and conditions as the board deems proper...." Nev.Rev. Stat. sec. 393.071. "The board of trustees of the school district shall make all necessary regula-

tions for the use of school buildings and grounds for civic meetings and recreational activities...." Nev.Rev.Stat. sec. 393.0717. WCSD's Community Use Policy states that the district's facilities shall be open to "organizations for public, literary, scientific, recreational or educational meetings, or for discussions of matters of general public interest...." Ad.Reg. 1330(C)(4). Neither state law nor WCSD regulation expressly excludes religious use of public school facilities.

they wanted to use that facility for a religious purpose, which Defendant believes is barred by the Nevada constitution, state statutes and other authorities; and

(4) that although Defendant's Administrative regulation 1330, which has been in effect since May 27, 1986, does not contain any reference to a bar on uses for religious purposes, Defendant's foregoing interpretation of Nevada law and other authorities excludes any use of its facilities for religious purposes.

On August 26, 1988, the United States District Court for the District of Nevada, Judge Howard D. McKibben presiding, conducted a hearing on Northgate's motion for preliminary injunction. Judge McKibben, relying primarily on indications that Northgate would become permanently institutionalized at McQueen, denied the motion.

In December 1988, plaintiffs moved for reconsideration. Attached to the motion was an affidavit by Wallace stating that his church had no desire to use McQueen on a permanent basis. The affidavit further stated that Wallace believed that submitting a written application to WCSD would be futile based on his conversations with school officials. Judge McKibben denied the motion without prejudice to renew in the event that plaintiffs filed a written application with WCSD setting forth the intended use.

On March 28, 1990, Wallace submitted a written application for a one-time use of McQueen for Easter Sunday services on April 15, 1990. According to WCSD, this application was approved in an attempt to settle the case. Northgate conducted its service as scheduled. Plaintiffs then moved for summary judgment, contending that despite the voluntary aberration from its usual practice, WCSD maintained a policy of content-based discrimination toward religious use. This motion was denied July 30, 1990. WCSD then moved for summary judgment on January 15, 1991, asserting that WCSD Administrative Regulation (Ad.Reg.) 1330 does not create an open forum or, alternatively, that a compelling state interest exists in avoiding violation of the establishment clause and that this state interest justifies excluding Northgate from use of the McQueen facilities. Plaintiffs filed a cross-motion for summary judgment and the issue is now ready for resolution by this court.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure provides, in part:

[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

The court must first address whether WCSD has, as a matter of law, opened its facilities to expressive activity by the community and, if so, whether the legal characteristics of the forum created by WCSD subject its content-based exclusion of Northgate to a strict scrutiny analysis.

Religious discussion and worship are forms of speech and association protected by the First Amendment. *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). Therefore, the court must apply a forum analysis to determine whether a particular forum should be categorized as a traditional public forum, a nonpublic forum or a limited public forum. *Cornelius v. NAACP Legal Defense & Educ. Fund,* 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985); *Perry Educ. Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

Traditional public fora such as streets and parks are afforded the most extensive constitutional protection. These fora "have immemorially been held in trust for the use of the public and, time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). Speech and assembly can be censored in such fora "only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Cornelius,* 473 U.S. at 800, 105 S.Ct. at 3447.

In nonpublic fora such as military bases and prisons, the government may re-

strict speech and assembly if the restrictions are "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry*, 460 U.S. at 45, 103 S.Ct. at 955. General access to the nonpublic forum is restricted because the government has the power to limit the property under its control for the use to which it is dedicated. Therefore, granting selective access does not transform government property into a public forum. *Id.* at 47, 103 S.Ct. at 954–55.

 Limited or designated public fora, such as municipal auditoriums and university facilities made available for student groups, can be created by the government intentionally designating a nontraditional public forum for public discourse. Courts look to the policy and practice of the government and examine the nature of the property and its compatibility with expressive activity to discern the government's intent. *Cornelius*, 473 U.S. at 802, 105 S.Ct. at 3449. While the designation of a limited public forum is revocable, the government is subject to the same "compelling state interest" constraint if speakers within the group to whom access is allowed are to be excluded.

 WCSD argues that it has not created an open forum because it excludes all *religious uses from its facilities and does not discriminate among religious users.* WCSD correctly notes that when a school district creates a limited public forum, the "property remains a nonpublic forum as to all unspecified uses, ... and exclusion of uses—even if based upon subject matter or the speaker's identity—need only be reasonable and viewpoint-neutral to pass constitutional muster." *Lamb's Chapel v. Center Moriches Union Free School District*, 770 F.Supp. 91 (E.D.N.Y.1991) (citation omitted). If a school district wishes to exclude a category of speech or speakers, however, access to the forum must be "limited by well-defined standards tied to the nature and function of the forum." *Gregoire v. Centennial School District*, 907 F.2d 1366, 1371, (3d Cir.), *cert. denied*, 498 U.S. 899, 111 S.Ct. 253, 112 L.Ed.2d 211 (1990), *citing Perry*, 460 U.S. at 46–47, 103 S.Ct. at 956.

Here, WCSD's policy in effect from June 1982—May 1986 provided that "[c]ommunity groups shall be permitted and encouraged to use school facilities for worthwhile purposes provided that: ... the use thereof is not for a religious purpose." WCSD Ad.Reg. 1330. The version of Ad.Reg. 1330 that has been in effect since May 1986 omits the language "the use thereof is not for a religious purpose." Although the explicit ban on religious use has been deleted, WCSD interprets Ad. Reg. 1330, as well as the United States and Nevada Constitutions, as prohibiting use of WCSD facilities for religious purposes.

WCSD's current policy does not contain narrowly circumscribed guidelines, and in practice, almost any group can rent McQueen as long as the insurance is paid. As in *Gregoire*, a wide variety of civic and political groups have been allowed to use the facilities. 907 F.2d at 1374–75. The fact that WCSD policy does not expressly prohibit religious use and virtually all applications are granted undermines WCSD's argument that its guidelines are well-defined and consistently applied.

 Groups have rented WCSD facilities for Christmas parties and programs, and the possible religious nature of these events was not discussed on the applications. In addition, churches have been granted use of WCSD property for "instructional" and "missionary" activities. *See Plaintiff's motion for summary judgment (# 65)*, exhibit F and *Defendant's opposition (# 67)* at 24. It appears that WCSD based its denial of Northgate's request on the fact that the facilities would have been used for religious worship, while permitting other types of discussions and presentations of a potentially religious nature. There is no distinction between religious speech and worship for First Amendment purposes, however. *Gregoire*, 907 F.2d at 1382.

"In light of the Supreme Court's decision in *Mergens*, it is now clear that a secondary school may, by its acts, create a public forum implicating the same constitutional rules set forth in *Widmar*." *Gregoire*, 907 F.2d at 1378.[2] We therefore agree with Judge

---

**2.** The court recognizes that the Supreme Court's decision in *Board of Education v. Mergens*, 496

U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990) was based on an interpretation of the Equal

McKibben that Ad.Reg. 1330(c)(4), which states that the district's facilities shall be open to "organizations for public, literary, scientific, recreational or educational meetings, or for discussions of matters of general or public interest," and WCSD's practice of renting its facilities to a wide variety of applicants creates a limited public forum at McQueen. *See Wallace v. Washoe County School District,* 701 F.Supp. 187, 189–90 (D.Nev.1988).

██ WCSD contends that even if the school is a limited public forum, triggering application of strict scrutiny, Ad.Reg. 1330 is nevertheless constitutional because it is necessary to serve the compelling state interest in complying with the establishment clause. WCSD argues that granting Northgate access to McQueen will have the primary effect of advancing religion and will foster excessive government entanglement with religion in violation of the establishment clause.

In *Lemon v. Kurtzman,* the Supreme Court set out a three-part test to determine establishment clause violations: 1) the governmental policy must have a secular legislative purpose; 2) its principal or primary effect must neither advance nor inhibit religion; and 3) the policy must not foster an excessive government entanglement with religion. 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).

██ The first two prongs are satisfied. An equal access policy affording access to a wide range of groups fulfills the secular purpose requirement. A content-neutral policy eliminates the need to make determinations as to what activity is secular and what is religious, thereby avoiding excessive entanglement. *See Widmar,* 454 U.S. at 272 n. 11, 102 S.Ct. at 275 n. 11; *Wallace,* 701 F.Supp. at 190.

Judge McKibben found that granting Northgate's requested use would have the primary effect of advancing religion because it appeared that Northgate sought to become permanently institutionalized at McQueen. It is now evident, after a full development of the record, that Northgate simply seeks the same access as other groups that have been permitted to use the facilities.

The Supreme Court's recent decision in *Mergens* also facilitates our analysis of the second prong of the *Lemon* test. When the Court held the Equal Access Act constitutional, it extended the "equal access policy" logic constitutionally recognized in *Widmar* to the high school setting. *Gregoire,* 907 F.2d at 1380. WCSD concedes that if a student group wished to invite Pastor Wallace to an after-school club meeting to engage in religious speech, the school would have to allow it in compliance with the Equal Access Act. WCSD, therefore, has determined that its high school students are mature enough to distinguish between school-sponsored activities and student activities that are allowed but not officially sponsored. *Gregoire,* 907 F.2d at 1381. It must be presumed, then, that these same students are mature enough to make that distinction when the events are presented by outside groups. *Id.* at 1382.

As in *Mergens* and *Gregoire,* defendant may not argue that its discrimination is justified because of the impressionability of high school students. WCSD has the ability to ensure that McQueen students do not mistake allowing Northgate to use McQueen during non-school hours as an official endorsement. WCSD need not fear, then, that granting Northgate's application will impermissibly advance religion.

This court concludes that WCSD's Ad.Reg. 1330 and its policy of excluding religious speech is not necessary to achieve a compelling state interest. WCSD has created a limited open forum encouraging access to its facilities by a wide variety of groups but has denied plaintiffs access to this forum solely because of the religious content of plaintiffs' intended use. WCSD has no compelling state interest for excluding use of the forum by a group with a religious message. Plaintiffs' motion for summary judgment is granted to the extent that they seek a declaration that WCSD's current policy and practice is unconstitutional and an injunction ordering that WCSD make the McQueen facilities available to Northgate on the same basis as other groups.

Access Act and so does not directly control the issues in this case. As did the court in *Gregoire,*

however, we find the Court's logic in *Mergens* instructive. 907 F.2d at 1373 n. 5.

Plaintiffs also seek an order prohibiting WCSD from closing the limited open forum it has created. This the court declines to do. WCSD does not have a legal or constitutional obligation to open its school buildings to the public. *Perry*, 460 U.S. at 44, 103 S.Ct. at 954. The court expresses no opinion on the outcome should WCSD revise its policy and practices uniformly to exclude particular categories of speech. *See Travis v. Owego–Apalachin School District*, 927 F.2d 688, 693–94 (2d Cir.1991). The court here addresses only the case before it: use of a public high school facility within WCSD for religious purposes under WCSD's current policy.[3]

Accordingly,

IT IS HEREBY ORDERED that defendant's administrative regulation 1330, as it is being applied in this case, violates the plaintiffs' constitutionally protected rights. By virtue of these constitutional violations committed by the defendant under color of state law, the plaintiffs are entitled to declaratory and injunctive relief. Plaintiffs' motion for summary judgment is granted to the extent described above. Defendant's motion for summary judgment is denied.

It is so ORDERED.

---

**3.** It should be noted that this court's ruling involves only WCSD high school facilities. The court expresses no opinion on whether the result would be the same for other WCSD property, such as elementary schools.