TO BE PUBLISHED THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | No. 91-808 |
| | : | |
| of | : | April 20, 1993 |
| | : | |
| DANIEL LUNGREN | : | |
| Attorney General | : | |
| | : | |
| TRACEY BUCK-WALSH | : | |
| Special Assistant Attorney General | : | |
| | : | |

_____

THE HONORABLE SUSAN MINASIAN, COUNTY COUNSEL, COUNTY OF BUTTE, has requested an opinion on the following question:

May a school district rent a vacant classroom to a religious organization for use on Sunday?

CONCLUSION

Pursuant to the Civic Center Act, California has established a "civic center" [designated public forum] in its public schools, thereby permitting the state to allow religious organizations which lack suitable facilities limited access to public school facilities for use on Sunday, or other non-instructional time, so long as the organization is charged an amount at least equal to the school district's direct costs.

ANALYSIS

California is under no legal or constitutional obligation to open its school facilities to the public to permit the public to engage in free speech and free association. *Perry Education Association* v. *Perry Local Educators Association* (1983) 460 U.S. 37, 46 ("*Perry*"). When it does open its facilities to the public, it must do so in keeping with the provisions of the state and federal constitutions.

Historically, California has opened its school facilities to the public to encourage the exchange of ideas. The Civic Center Act, Education Code section 40041,[1] expresses California's

_____

1. Education Code section 40041, The Civic Center Act, reads as follows:

(a) There is a civic center at each and every public school facility and grounds within the state where the citizens, parent-teachers' associations, camp fire girls, boy scout troops, farmers' organizations, school-community advisory councils, senior citizens' organizations, clubs, and associations formed for recreational, educational, political,

intent to create a forum for the purpose of free speech and association.[2] Permissible activities listed in the Civic Center Act encompass virtually all forms of expression——artistic, political, religious, economic, educational and moral. Indeed, this forum established in California schools was deemed by the California Supreme Court as "no less public" than public parks or streets. *Danskin* v. *San Diego Unified School District*, 28 Cal.2d 536, 547 (1946).[3]

In order to justify a content based restriction on speech in a designated public forum, government authorities must prove the exclusion or discrimination is necessary to serve a compelling state interest and is narrowly drawn to achieve that end. *Widmar* v. *Vincent* (1981) 454 U.S. 262, 270. Content based censorship is almost inevitably unconstitutional:

> [A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content . . . . The essence of this forbidden censorship is content control . . . .

---

> economic, artistic, or moral activities of the public school districts may engage in supervised recreational activities, and where they may meet and discuss, from time to time, as they may desire, any subjects and questions which in their judgment pertain to the educational, political, economic, artistic, and moral interests of the citizens of the communities in which they reside,

> (b) the governing board of any school district may grant the use of school facilities or grounds as a civic center upon the terms and conditions the board deems proper, subject to the limitations, requirements, and restrictions set forth in this article, for any of the following purposes: (1) public, literary, scientific, recreational, educational, or public agency meetings, (2) the discussion of matters of general or public interest, (3) the conduct of religious services for temporary periods, on a one-time or renewable basis, by an church or religious organization which has no suitable meeting place for the conduct of the services, provided the governing board charges the church or religious organization using the school facilities or grounds a fee as specified in subdivision (c) of § 40043, (4) child care or day care programs to provide supervision and activities for children of preschool and elementary school age, (5) the administration of examinations for the selection of personnel or the instruction of precinct board members by public agencies, (6) supervised recreational activities, and (7) other purposes deemed appropriate by the governing board.

2. Unless otherwise noted, all statutory references are to the Education Code.

3. The federal Courts of Appeal for the First, Fourth and Fifth Circuit have held that school facilities made available for social, civic, and recreational use by outside groups are designated public fora subject to the strict standards governing public forum. *Grace Bible Fellowship, Inc.* v. *Main School Admin. Dist. No. 5*, 941 F.2d 45 (1st Cir. 1991); *Gregoire* v. *Centennial School District*, 907 F.2d 1366 (3d Cir.), cert. den., 1489 U.S. 899 (1990); *National Socialists White People's Party* v. *Ringers*, 473 F.2d 1010 (4th Cir. 1973) (en banc); *Knights of the Klu Klux Klan* v. *East Baton Rouge Parish School Bd.*, 578 F.2d 1122 (5th Cir. 1978). District courts in at least three federal courts have held the same. *Knights of the Klu Klux Klan* v. *Martin Luther King, Jr. Worshipers*, 735 F.Supp. 745, 752 (M.D. Tenn. 1990); *Wallace* v. *Washoe County School District*, 701 F.Supp. 187 (D. Nev. 1988); *Country Hills Christian Church* v. *Unified School District No. 512*, 560 F.Supp. 1207 (D. Kansas 1983). But see *Lambs Chapel* v. *Center Moriches Union Free School District*, 959 F.2d 381 (2d Cir. 1992) (cert. granted).

Necessarily, then, under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views . . . . Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone. *Police Department* v. *Mosley* (1972) 408 U.S. 92, 95-96 (1972) (internal citations omitted).

The question which must be answered is, does California's open school facility policy violate laws prohibiting state establishment of religion such that excluding religious organizations from the open forum is a narrowly drawn and sufficiently compelling state interest sufficient to support a content based restriction on speech.

I

**ALLOWING RELIGIOUS ORGANIZATIONS TO USE SCHOOL FACILITIES DOES NOT VIOLATE THE ESTABLISHMENT CLAUSE OF THE UNITED STATES CONSTITUTION OR THE CALIFORNIA CONSTITUTION**

A.       The Establishment Clause Of The United States Constitution

The First Amendment to the United States Constitution provides in relevant part: "Congress shall make no law respecting an establishment of religion."

This provision is made applicable to the states through the Fourteenth Amendment. *Wallace v. Jaffree* (1985) 472 U.S. 38, 50. The Establishment Clause was originally intended to "erect a wall of separation between church and state." *Everson v. Board of Education* (1947) 330 U.S. 1, 16. However, the Supreme Court acknowledges that the "line of separation far from being a wall, is a blurred, indistinct, and variable barrier depending on all the circumstances of the particular relationship." *Lemon v. Kurtzman* (1971) 403 U.S. 602, 612 ("*Lemon*").

To assess whether a statute or practice incidentally benefits religion or impermissibly crosses the church/state wall of separation, the Supreme Court has generally applied the tripartite test established in *Lemon*. To withstand an Establishment Clause challenge, the statute must have a clearly secular legislative purpose, its principal or primary effect must neither advance nor inhibit religion, and the statute must not foster excessive government entanglement with religion. *California Educational Facilities Authority* v. *Priest* (1974) 2 Cal.3d 593, 612-613 ("*Priest*").

In *Priest*, the California Supreme Court reiterated:

In reviewing a law attacked on establishment grounds, the Supreme Court seeks to ascertain whether the enactment furthers any of the primary evils which the clause was intended to forestall, i.e., the `sponsorship, financial support, and active involvement of the sovereign in religious activity.' In this regard, the court has determined that an enactment may be a "law respecting an establishment of religion" even though in effect it does not promote a state religion.' Moreover, a law may violate the clause by aiding all religions, not only by preferring one sect of religion over another. However, recognizing that in complex modern society some interaction between government and religious organizations is inevitable, the court has determined that a law which confers indirect, remote, or incidental benefits upon religious institutions is not, for that reason alone, constitutionally defective. (Internal

citations omitted; emphases added.)

i.    Education Code Section 40041 Has A Secular Legislative Purpose

A government practice or statute fails the purpose prong of *Lemon* if its purpose is to endorse a religious custom or viewpoint.  See *Allegheny County v. American Civil Liberties Union* (1989) 492 U.S. 573, 592.  "The purpose prong of the *Lemon* test is whether the government's actual purpose is to endorse or disapprove of religion."  *Lynch v. Donnelly* (1984) 465 U.S. 668, 692 (O'Connor, J. concurring.)  Additionally, courts must be "reluctant to attribute unconstitutional motives" to government actions in the face of a plausible secular purpose.  *Mueller v. Allen* (1983) 463 U.S. 388, 394-395.

In order to ascertain the purpose of section 40041, we must inquire as to what the Legislature intended.  In addition to investigating what was said by the statute's sponsors and proponents, other rules of statutory interpretation must be consulted.  First, positions of a statute should be read together and construed to achieve harmony.  *Woodland Hills Homeowners Association v. Los Angeles Community College District* (1990) 218 Cal.App.3d 79, 90 ("*Woodland Hills*").  Second, statutes must be accorded a reasonable and common sense construction consistent with their apparent purpose and intent, practical rather than technical in nature, and which upon application will result in wise policy rather than mischief or absurdity; such indicators should be considered as context, the object in view, the evils to be remedied, the history of the times and of legislation on the same subject, public policy, and contemporaneous construction.  *San Diego Union v. City Council* (1983) 146 Cal.App.3d 947, 954.

Bearing these principles in mind, we find that section 40041 expressly permits community organizations to meet at public school facilities and engage in expressive activity.  By adding[4/] the religious uses to the Civic Center Act, the Legislature expressed its intent to include religious expression in the vast array of expressive activity listed.[5/]  "The Supreme Court has made it clear that a policy of permitting open access to a public forum, including non-discriminatory access for religious speech, is a valid secular purpose."  *Kreisner v. City of San Diego*, Opinion No. 90-55354, LEXIS 3428 (9th Circuit, 1993), citing *Westside Board of Education v. Mergens* (1990) 496 U.S. 226, 249 and *Widmar*, 454 U.S. at p. 271.

Thus section 40041's provision of a civic center at each and every public school facility for a wide variety of purposes is a valid expression of a secular legislative purpose.  This conclusion is at odds with an opinion written by this office nearly 30 years ago[6/] which we believe to have been

---

4.  1963 amendment to section 16551 (predecessor to 40041).

5.  See June 21, 1963 letter from Assemblyman Barnes, author of the 1963 amendment, to Governor Brown recommending the amendment's approval, stating the "use of school buildings by community organizations is generally permitted at times when such use would not conflict with the conduct of the schools.  This bill is in keeping with this concept."  See also, chapter 1502, Statutes of 1982 (amendment to Civic Center Act), stating, in section 1, "It is the intent of the Legislature in enacting this act to guarantee public access to school facilities . . . ."  Finally, see chapter 729, Statutes of 1985 (amendment to Civic Center Act), which sets forth the legislative intent currently embodied in section 40041(a).  This amendment is significant insofar as it expanded religious use from a "temporary" basis to a renewable basis.  Notably, Legislative Counsel had no reservations, constitutional or otherwise, with this amendment.

6.  43 Ops.Cal.Atty.Gen. 62 (1964).

misguided,[7] particularly in view of subsequent California Supreme Court cases.

ii. The Principal Or Primary Effect Of Education Code Section 40041 Neither Advances Nor Inhibits Religion

A religious organization will receive some benefit from being allowed to rent space at a school, insofar as the church will not have to spend money on rent elsewhere. The Supreme Court has held that the benefits to religion are improper only if they are other than incidental. *Widmar*, 454 U.S. at 273-274. Two factors are relevant in determining whether benefits are incidental: (1) there must not be any imprimatur of state approval on religious sects or practices, and (2) the benefits must be generally available to others besides religious groups. *Id.* When these two factors are applied to section 40041, there is nothing to suggest that the statute endorses any particular religious belief or that the statute grants favored status to religion in general over other forms of expressive activity, or to any one particular religion.

Section 40043[8] creates four categories of groups who may avail themselves of the

---

7. The opinion was misguided in concluding the statute aided religion because, in analyzing the purpose of section 40041, it focused only on the 1963 amendment which added religious uses to the list of eligible facility users and ignored the other purposes of the act. It was and is an impermissibly narrow approach to statutory construction.

8. 40043. Grant of use with or without charge; Specified organizations and activities

(a) The governing board of any school district shall grant without charge the use of any school facilities or grounds under its control, when an alternative location is not available, to nonprofit organizations, and clubs or associations organized to promote youth and school activities, including, but not limited to:

(1) Girl Scouts, Boy Scouts, Camp Fire, Inc.

(2) Parent-teachers' associations.

(3) School-community advisory councils.

This subdivision shall not apply to any group which uses school facilities or grounds for fundraising activities which are not beneficial to youth or public school activities to the district, as determined by the governing board.

(b) Except as otherwise provided by law, the governing board may charge an amount not to exceed its direct costs for activities other than those specified in subdivision (a). Each governing board which decides to levy these charges shall first adopt a policy specifying which activities shall be charged an amount not to exceed direct costs.

(c) The governing board of any school district which authorizes the use of school facilities or grounds for the purpose specified in paragraph (3) of subdivision (b) of Section 40041 shall charge the church or religious denomination an amount at least equal to the district's direct costs.

(d) In the case of entertainments or meetings where admission fees are

5. 91-808

Civic Center Act:  First, nonprofit organizations and associations which promote youth and school activities; second, groups other than those specified in subdivision (a) may be assessed an amount not exceeding direct costs so long as the district first adopts a policy identifying such activities; third, religious organizations lacking suitable housing must pay at least the direct cost associated with the use of the facility; and fourth, activities where admission is charged whose net receipts are not expended for the welfare of the peoples of the district or charitable purposes are charged the fair rental value of the facilities.[9]

The effect of the statutory scheme neither advances nor inhibits religion.  Religious services treated merely as another class of activity which can take place in school facilities or grounds.  Special notice should be given to the fact that religious activities are charged an amount **at least equal** to the district's direct costs.

Religious activities are not give special treatment.  Even though religious activities are neither "nonprofit" nor school-related, they are not allowed free use of school facilities as provided in subdivision (a).  On the other hand, religious activities are not treated like other groups which similarly solicit contributions but must pay fair rental value for the use of school facilities as provided in subdivision (d).  Rather, religious activities are treated very similarly to the category of activities covered by subdivision (c) where the district may adopt a policy specifying certain activities which are charged an amount **not to exceed** direct costs.

The barriers to religious expression contained in section 40041 appear de minimus.  And there may be narrow yet compelling reasons supporting section 40041's tiered approach.  For example, by charging for the direct cost for facility use, the state avoids any claim it is making an impermissible gift to religion.  By limiting use to unhoused sects the government avoids permanent institutionalization of religious use within a given school facility.  Such an occurrence might allow one to reasonably infer the state has placed is imprimatur on a particular religion.  See, e.g., *Wallace* v. *Washoe County School District*, 701 F.Supp. 187, 191-192 (D.Nev. 1988).  Absent specific facts establishing a substantive impediment to religious expression, we will defer to the Legislature's statute and tiered approach to access.

In summary, it is clear that the Legislature was careful not to lend favorable treatment to religious activities.  At the same time, it was mindful that it could not discriminate against these groups by banning them completely.  It established a workable scheme by which religious activities are expressly provided for, but not given preference over other types of gatherings.

---

charged or contributions are solicited and the net receipts are not expended for the welfare of the pupils of the district or for charitable purposes, a charge shall be levied for the use of school facilities or grounds which charge shall be equal to fair rental value.

9.  Mandating that commercial enterprises which wish to use school facilities, ie. activities subject to 40043(d), pay the fair rental value for the use of school facilities is permissible.  Commercial speech enjoys a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values. *Board of Trustees of State Univ. of New York v. Fox* (1989) 492 U.S. 469, 477.  It, therefore, may be subject to greater government regulation than non-commercial speech. *City of Cincinnati v. Discovery Network* (1993) 93 Daily Journal D.A.R. 3716, 3719-3720.

iii.     The Use Of School Property By Religious Organizations Does Not Involve
         Excessive Governmental Entanglement With Religion

The excessive entanglement test was directed at "programs, whose very nature are apt to entangle the state in details of administration." *Lemon*, 454 U.S. at p. 615, quoting *Walz v. Tax Commission* (1970) 397 U.S. 664, 695.  When this test is applied to the instant facts, there is no excessive entanglement because school districts neither regulate the content of the expressive activity allowed by the organizations delineated in section 40041(a), nor do they purport to get involved in the content of the religious uses permitted under 40043(c).  Conversely, religious groups and other users do not tell the school district how to run the schools.  Rules, if any, pertaining to tenant conduct, i.e., no posting of advertising, no solicitation, no posting of meeting schedules, apply across the board.  The courts have repeatedly concluded that such arms length transactions do not involve excessive entanglement. *Woodland Hills*, 218 Cal.App.3d at p. 93 (community college's 75-year lease of surplus property to religious organization did not constitute impermissible entanglement with religion). *Priest*, 12 Cal.3d at p. 602 (low interest college bonds could issue even if used by sectarian educational institutions).

B.     The California Constitution.

i.     Article I, Section 4

Article I, section 4 of the California Constitution provides that "free exercise and enjoyment of religion without discrimination or preference are guaranteed ... the Legislature shall make no law respecting an establishment of religion."  California courts have suggested that Art. I, § 4 is broader than the Establishment Clause of the First Amendment because of the additional language regarding "preference."  See *Fox v. City of Los Angeles*, 22 Cal.3d 792, 796 (1978); *Feminist's Womens' Health Center v. Philibosian*, 157 Cal.App.3d 1076, 1092 (1984).[10]  State constitutions can be more protective of certain rights than the federal constitution, but they cannot abridge other federal constitutional rights.  So——while it may be possible to have a stronger state constitutional establishment clause, it cannot abridge the federal constitutional right to the free exercise of religion or right to free speech.  Nevertheless, the question is moot for purposes of this analysis.  There is no factual support to further the argument that the statutes in question favor or prefer any individual religion or religion as a whole.

ii.     Article XVI, Section 5

The California Constitution also contains another provision restricting governmental involvement in religion.  Article XVI, section 5 provides in part that:

> Neither the Legislature, nor any county, city and county, township, school district, or other municipal corporation, shall ever make an appropriation, or pay from any public fund whatever, or grant anything to or in aid of any religious sect, church, creed, or sectarian purpose, or help to support or sustain any school, college, university, hospital, or other institution controlled by any religious creed, church or

---

10.  However, no majority of the California Supreme Court has construed the "no preference" clause as broader than the federal establishment clause.  In *Fox*, only three of the seven justices so much as hinted that the California Constitutional provision may be broader than the federal provision.  22 Cal.3d at 799, 800, n. 2, 806, n. 8.  In *Sands v. Morongo Unified School District*, 53 Cal.3d 863 (1991), only two justices suggested the "no preference" clause was broader than federal proscriptions. *Id.*, at 905-914.

sectarian denomination whatever; nor shall any grant or donation of personal property or real estate ever be made by the state, or any city, county, town, or other municipal corporation for any religious, creed, church, or sectarian purpose whatever.

This provision has been interpreted to "ban any official involvement, whatever its form, which has the direct, immediate, and substantial affect of promoting religious purposes." *California Teachers' Association v. Riles* (1981) 29 Cal.3d 794, 806. Under Article XVI, section 5, the fact that a statute has some identifiable secular objective will not immunize it from further analysis to ascertain whether it also has the direct, immediate, and substantial affect of advancing religion. *Priest*, 12 Cal.3d at p. 604. This section has never been interpreted to require government hostility to religion, nor to prohibit a religious institution from receiving indirect, remote, and <u>incidental</u> benefits from a statute which has a secular primary purpose. *Id*. at 605. See, eg., *Lundberg v. County of Alameda*, 46 Cal.2d 644 (1956) (upholding tax exemptions for parochial, primary, and secondary schools) and *Bowker v. Baker*, 73 Cal.App.2d 653, 666 (1946) (upholding the state's ability to transport parochial students on public school busses by recognizing many expenditures of public money give incidental benefits to denominational schools and their institutions of higher learning).

The question is not whether section 40041 provides a benefit to religion by allowing religious organizations to use money it would otherwise spend on rent for another purpose, but whether that benefit is <u>incidental</u> to a primary public purpose. *Priest*, 12 Cal.3d at p. 605. Applying this specific constitutional provision, the Ninth Circuit found that the San Francisco Airport Authority did not impermissibly rent space to the Christian Science Reading Room, holding the benefits received by the religious organization were <u>incidental</u> to the secular primary purpose of raising revenue. *Christian Science Reading Room Jointly Maintained* v. *City and County of San Francisco*, 784 F.2d 1010, 1015 (9th Cir. 1986).

Once again, the religious benefits of section 40041 are indirect and incidental to the district's secular purpose of providing a Civic Center at school facilities for the free expression of ideas.

iii.    <u>Article IX, Section 8</u>

A third section of the California Constitution is relevant to the issues analyzed here. Article IX, section 8 states in part:

No money shall ever be appropriated for the support of any sectarian and/or denominational school, or any school not under the exclusive control of the officers of the public schools; nor shall any sectarian or denominational doctrine be taught or instruction therein be permitted, directly or indirectly, in any of the common schools of this state.

Section 40041 does not require the outlay or appropriation of public money. There is no expenditure of public funds, either by grant or a loan, no reimbursement by the state for expenditures made by a parochial school or college, and no extending or committing of a state's credit through section 40041. Incidental benefits in the form of district officials processing rental applications do not amount to a violation, as this service is provided to non-sectarian activities. Public officials may legally spend part of their working time processing applications by sectarian schools relating to incorporation, tax exemption, zoning, health and safety, building permits, and parking regulations as well as providing fire and police protections to private as well as public institutions. *Priest*, 12 Cal.3d at 604.

II

## RELATED CALIFORNIA ATTORNEY GENERAL OPINIONS

Although prior Attorneys General have opined on the constitutionality of the use of school property for religious purposes or services,[11] none of these opinions engaged in the modern constitutional analysis formalized in *Lemon v. Kurtzman* (1971) 403 U.S. 602. None characterized the open, public nature of the forum and attendant First Amendment concerns. Finally, no opinion specifically addressed Education Code sections 40041 or 40043, although we have examined prior incarnations of the Civic Center Act.

In 25 Ops.Cal.Atty.Gen. 309 (1955) we opined that: (1) public property could constitutionally be sold or leased for religious purposes provided the transaction was at arms length and (2) school property could be used for meetings of voluntary student religious organizations.

In 43 Ops.Cal.Atty.Gen. 62 (1964), we held that the Civic Center Act's predecessor statute, Education Code section 16551, unconstitutionally favored religious use of school facilities, because sectarian uses paid less than commercial activities, even though religious organizations paid more than noncommercial, nonsectarian activities.[12] In support of this opinion, we stated that Article XVI, section 5, of the California Constitution was "[not] designed to insure merely equal treatment [between secular and sectarian purposes when renting government property to religious organizations] but to prevent government assistance to religion." *Id.* at 67-68. However, the California Supreme Court in *Priest*, 12 Cal.3d at p. 599 emphasized that Article XVI, section 5, has never been interpreted "[t]o require government hostility to religion nor [to prevent religions from receiving an incidental benefit] from a statute which has a secular primary purpose." We disapprove of 43 Ops.Cal.Atty.Gen. 62 to the extent it concludes article XVI, section 5, prohibits incidental benefits to religion.

Both 25 Ops.Cal.Atty.Gen. 309 and 43 Ops.Cal.Atty.Gen. 62 were questioned in 60 Ops.Cal.Atty.Gen. 269, 279-280 (1977) in light of the holding in *Johnson v. Huntington Beach Union High School District*, 68 Cal.App.3d 1 (1971).[13] In our 1977 opinion we concluded that

---

11. Opinions 4061 (4-24-20), 6679 (4-13-29), 10672 (6-30-36), 10676 (5-8-36), NS 2569 (5-11-40).

12. We have already addressed the faulty statutory analysis contained in our 1964 opinion, see p. 5, *infra*. In that opinion we concluded, under a code section different from the Civic Center Act's predecessor, that section 16068 permitted rental of facilities to classrooms provided (1) a fair rate was charged, (2) the lease not exceed 5 separate or consecutive calendar days, (3) the facility be vacant, and (4) religious use is remote from instructional time.

13. In *Johnson*, the Fourth District Court of Appeal found that the school sponsorship of a school hour used by a Bible study group violated the United States and California Establishment Clauses as well as Article XVI, section 5, of the California Constitution. Nonsectarian clubs were welcomed. Subsequently, the United States Supreme Court held in *Mergens*, 496 U.S. 226 (1990) that denying a religious group permission for meeting on school premises during noninstructional time while maintaining a limited open forum for other student groups impermissibly violated the Equal Access Act, 20 U.S.C. § 4071-4074. That act, which the court found did not violate the United States Establishment Clause, prohibits public secondary schools that receive federal financial assistance from denying equal access, on the basis of the content of the speech, to students who wish to meet within the forum. *Johnson* is infirm in light of the

sectarian institutions could not <u>lease</u>, during school hours, vacant classrooms in order to conduct religious education and pursuant to Education Code section 16051.1 (now generally addressed in § 39470).[14/] 60 Ops.Cal.Atty.Gen. 269 (1977). Again, the limitations on leasing vacant school facilities expressed in 43 Ops.Cal.Atty.Gen. 62 were also based on section 16068. The successor statutes to sections 16051.1 and 16068 are found in article 9, chapter 3 of part 23 of the Education Code. Our analysis and conclusion herein is limited to the Civic Center Act, section 40041. The Civic Center Act is a self-contained unit found in article 2, commencing with section 40040 of chapter 6 of part 23, and contains within its provisions independent authorization and conditions for the use as a Civic Center of school facilities by religious organizations without any reference whatsoever to other code sections pertaining to leasing of district facilities. Nonetheless, we do not foreclose on the constitutionality of equal access to school facilities by religious organizations under the successor statutes to 16051.1 and 16068, but presently decline to address the issue. We note, for the record, our comments in 60 Ops.Cal.Atty.Gen. 269 at page 278:

> Our conclusion is not meant to prohibit the rental of public school buildings by religious groups at all times. The critical distinction is between operating public schools and public school buildings. There are times, such as weekends and certain holidays, when the public school ceases to operate. In the absence of students, classes, and co-curricular and extracurricular activity, the potential for Establishment Clause violations is proportionately reduced. [We] do not purport to prohibit sectarian organizations from renting at fair market value classrooms in public school buildings at times sufficiently remote from the operating public schools.

While our present analysis is limited to section 40041, our present conclusion is consistent with the views we articulated in 1977.

III

**CONCLUSION**

So long as the state designates school facilities as open forums, no violation of the Establishment Clauses of the United States or California Constitutions, or of Article IX, section 8 and Article XVI, section 5 of the California Constitution exists if religious organizations lacking suitable housing are permitted equal access to such facilities because the resulting benefit to the religious organization is merely incidental to a primary public purpose.

* * * *

---

decision in *Mergens*. See also, *Garnett* v. *Renton School District No. 403*, Opinion 91-36036, LEXIS 4137 (9th Cir., 1993).

14. Section 39470 et seq. sets forth the procedure for renting or leasing of vacant school facilities.